505 A.2d 888

**Julianna ELLETT**

v.

**GIANT FOOD, INC.**

**No. 791, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

March 11, 1986.

696

Mercedes C. Samborsky, Joppa, for appellant.

Waldemar J. Pflepsen, Jr. (Ellen Scalettar, Robert F. Condon and Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, on brief), Washington, D.C., for appellee.

Argued before BISHOP, ADKINS and WENNER, JJ.

ADKINS, Judge.

Appellant, Julianna Ellett, once was employed by appellee, Giant Food, Inc. She was fired on January 21, 1982, while, according to her, she was absent on medically-ordered worker's compensation leave. On January 7, 1985, she sued Giant in the Circuit Court for Baltimore City. Count I of her complaint alleged abusive discharge, claiming that she had been fired in retaliation for seeking (and obtaining) worker compensation benefits. Count II was characterized as an "[a]ction for wrongful interference with plaintiff's right to collect unemployment compensation." It was grounded on charges that Ellett had been denied prompt payment of unemployment benefits because Giant had willfully and maliciously given Maryland unemployment authorities a false statement as to the reason for the termination of Ellett's employment.

Summary judgment was entered in favor of Giant. The trial court concluded that Count I was barred by collateral estoppel and that the cause of action asserted in Count II failed to state a claim on which relief could be granted. Ellett, contending that the trial court was wrong in both respects, now seeks reversal. Giant argues that the judgment in its favor was proper, both for the reasons given by

the trial judge and for a number of other reasons. We shall set forth facts sufficient to place these issues in context.

## Facts

Although, as we shall see, the record before us is sparse, there seems to be no disagreement that Ellett was employed by Giant from September or October 1978 until her discharge on January 21, 1982. She was an employee at will, initially working as an assistant dispatcher at Giant's facility at Landover, Maryland. At some point Ellett, who is white, began dating a black fellow-employee, whom she eventually married. This relationship, according to Ellett, was the cause of harassment by other employees and by Giant. The latter, again according to Ellett, used a pretextual anti-nepotism policy to transfer her to a less desirable job as a clerk. The harassment, she says, continued.

In March 1980 Ellett suffered a work-related injury. She filed a claim under the federal Longshoremen and Harbor Workers' Act, 33 U.S.C. § 902 et seq.[1] On January 21, 1982, Giant fired her. She claimed unemployment compensation in Maryland, but receipt of benefits was delayed because, she avers, Giant falsified information about her discharge. In May 1982, she settled her workers' compensation claim, with Giant and its insurer.

At some point after her discharge Ellett filed a complaint with the Equal Opportunities Commission and, still later, sued Giant in the United States District Court for the District of Maryland, where she lost in part and won in part. We shall return to that litigation when we discuss the issues pertaining to Count II of Ellett's complaint in the instant case. We need not dwell on it with respect to Count I, to which we now turn.

---

1. This statute operates as the workers' compensation law for the District of Columbia, where Ellett then resided.

### Count I

Count I, it will be recalled, alleged abusive discharge. In Maryland, an employer who fires an at-will employee may be required to respond in damages if the discharge violated some " 'clear mandate of public policy.' " *Moniodis v. Cook,* 64 Md.App. 1, 10, 494 A.2d 212, *cert. denied,* 304 Md. 631, 500 A.2d 649 (1985) (quoting *Adler v. American Standard Corp.,* 291 Md. 31, 43, 432 A.2d 464 (1981)). The clear mandate of public policy that Giant violated when it fired her was, according to Ellett, Code, Art. 101, § 39A(a), which provides that an employee entitled to Maryland worker compensation benefits. "may not be discharged from employment solely because he files a claim for compensation under this article."

■ Giant argues that this claim is barred by both *res judicata* and collateral estoppel, because of the prior federal litigation. The trial court accepted the latter theory. For reasons we shall explain when we reach Count II, we believe that was error, but we need not discuss it now, nor need we reach the *res judicata* issue. There is another basis for affirming the judgment as to Count I. A judgment may be affirmed on any ground adequately shown by the record whether or not relied upon by the trial court. *See Joseph H. Munson Co., Inc. v. Secretary of State,* 294 Md. 160, 448 A.2d 935 (1982).

The ground we have in mind is found in the document Ellett signed when she settled her worker compensation claim, a claim that was made before her discharge, was pending when she was discharged, and was settled several months later. The settlement document, signed by Ellett, her then-lawyer, and representatives of Giant and its insurer, is attached to Giant's affidavit in support of its motion for summary judgment, and formed one basis for that motion. Ellett does not contend that the document is in any respect inaccurate, that she did not sign it, that she was wrongly induced to sign it, or that she did not understand its contents and effect. The settlement agreement, as the

trial court correctly found, is an undisputed fact for summary judgment purposes.

After reciting various details of Ellett's work-related injury and her complaints as a result of it, the document shows that Ellett's compensation claim was settled for $15,000 plus $3,110 in attorney's fees. It further recites (immediately above Ellett's signature):

> The carrier has voluntarily advanced the sum of $1,520.00 to the claimant. The advance is to be taken from the total amount of the settlement. The claimant further agrees that she has no Section 49 claim.

The settlement was duly approved by the Deputy Commissioner, 40th Compensation District, U.S. Department of Labor.

As we have seen, Ellett, a resident of the District of Columbia, sought worker compensation under the federal Longshoreman and Harbor Workers Act. The reference to "section 49" in the settlement agreement is to 33 U.S.C. § 948a which reads, in pertinent part:

> It shall be unlawful for any employer ... to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer....[2]

This, of course, is the federal counterpart to Maryland's Art. 101, § 39A(a).

When Ellett, for valuable consideration, agreed she had no claim under that statute she effectively agreed that she had not been fired in retaliation for claiming compensation. That statement, made in an agreement settling a disputed compensation claim, is tantamount to a release. Ellett cannot now repudiate it, whether she attempts to do so by invoking the similar provision of § 39A(a) or other-

---

2. The provision codified as 33 U.S.C. § 948a is part of the Act of March 4, 1927, C. 509, § 49, as added October 27, 1972, A.L. 92–576, § 19, 86 Stat. 1263.

wise.[3] The trial court, therefore, correctly entered judgment for Giant on Count I.

## Count II

To recapitulate, Count II stated that Giant had falsely informed the unemployment compensation authorities that Ellett had voluntarily quit. An employee "leaving work voluntarily without good cause" is disqualified for unemployment benefits for a period of time. Art. 95A, § 6(a). In Ellett's view, had Giant advised the authorities that she had been fired, she would have been entitled to immediate benefits. Thus, what she characterizes as Giant's willful and malicious misrepresentation caused her pecuniary loss as well as other harm.

In due course we shall consider whether these allegations make out a cause of action. But we first shall address Giant's contentions that they are in any case barred by *res judicata* and collateral estoppel.

Some of the basic ingredients of *res judicata* are unquestionably present here. There was prior litigation (the federal case) between the same parties. The judgment in that case could bar a second suit between them if this case is based upon the same cause of action as was that. And if the bar operates, it is conclusive both as to matters actually decided in the first case and as to matters that might have been decided in it. *Jack v. Foster Branch Homeowners Ass'n*, 53 Md.App. 325, 332–33, 452 A.2d 1306 (1982). In Maryland, whether causes of action are the same for *res judicata* purposes is decided by the "same evidence" test: the requisite identity of causes of action is present if the evidence necessary to support a judgment for the plaintiff

---

**3.** We need not decide whether Ellett, who sought compensation under federal law, can claim abusive discharge because of a violation of § 39A(a), a part of Maryland worker compensation law under which she *did not seek* compensation. For a discussion of an abusive discharge claim based on § 39A, *see Kern v. South Baltimore General Hospital*, 66 Md.App. 441, 504 A.2d 1154 (1986).

in the second case would have sustained a judgment for her in the first. 53 Md.App. at 334, 452 A.2d 1306.

To apply the test to Count II, we must scrutinize what we know about the federal case. Ellett's complaint in that matter charged several things. First, it alleged that she had been harassed, discriminated against in various ways, and ultimately discharged because of her association with and eventual marriage to a black man. Giant's actions were said to be in violation of 42 U.S.C. §§ 1981 and 1983 because they "purposefully and intentionally deprived ... [Ellett] of her civil right to associate with members of the Negro race." On the basis of the same factual allegations, Ellett charged Giant with conspiracy to deprive her of equal privileges and immunities under the law in violation of 42 U.S.C. § 1985(3).

To these federal claims Ellett appended two pendent State claims. The first charged breach of contract. It had to do with her transfer from the assistant dispatcher position to the clerk job. The second was an abusive discharge claim alleging that "the sole motive for [her] termination stemmed from her marriage to a black co-employee and her association with his friends, and [that] said retaliatory, racially discriminatory termination is and was in violation of the public policy of the State of Maryland...."

Although the record contains no official documentation of the outcome of the federal case, it seems that Ellett won on her harassment claim, but lost on the others. However that may be, it is immediately apparent that the federal case, at least as framed by Ellett's complaint, had nothing to do with delay in payment of unemployment compensation. Proof of facts relating to that, as set forth in Count II in the present case, would not have been necessary to sustain a judgment for her in the first. That case related essentially to acts of Giant prior to and including her discharge, not to acts of Giant thereafter. Thus,

the causes of action are not the same for *res judicata* purposes.[4]

Of course our inquiry is not ended by the rejection of Giant's *res judicata* argument. Since there is identity of parties here, the judgment in the federal case would be conclusive as to matters actually litigated and decided in it, "even though the cause of action in the second case is different from the cause of action in the first." *Jack*, 53 Md.App. at 336, 452 A.2d 1306. Thus, if the unemployment compensation issue raised in Count II of the instant case was in fact decided in the federal case, Ellett is collaterally estopped from litigating it again.

Our knowledge of what was in fact litigated in the federal case is derived from Giant's affidavit in support of its motion for summary judgment and Ellett's affidavit in opposition. The former asserts that Ellett's present charge that "Giant acting through its agents and supervisory employees ... did willfully, and maliciously incorrectly advise the Maryland State Unemployment Compensation Commission [*sic*] that [Ellett] voluntarily quit her job ..." was a factual allegation that formed a basis for the federal suit. In support of this statement, the affidavit incorporates some of Ellett's answers to interrogatories in the federal case and proposed pretrial order prepared by Giant in that action.

 One of the answers says:

---

4. We are aware that *res judicata* bars not only a cause of action actually asserted in a former suit, if it is the same as the one asserted in the second suit, but also a cause of action that with propriety might have been asserted in the former suit. It seems doubtful that Ellett's present Count II claim could have been asserted in the federal case. It does not appear to be a § 1981 or a § 1983 claim, nor would it seem to be an appropriate additional pendent State claim in that case. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) and *Mason v. Richmond Motor Co., Inc.*, 625 F.Supp. 883 (E.D.Va.1986). Giant, in any case, does not argue that the Count II claim might have been added to the federal case as an additional pendent State claim, so we need not address that question.

> After I [Ellett] was fired Giant lied to the Unemployment Compensation Board [*sic*] and told them [*sic*] I resigned for personal reason [*sic*]. This was done as retaliation for complaining to the EEOC and to interfere with payment to me of my unemployment compensation.

Because we do not have the interrogatory to which the answer responded, we cannot tell in what context the answer was given. Moreover, the mere fact that an issue is identified in an answer to an interrogatory does not mean that that issue was in fact litigated when the case was tried.

There are similar problems with the proposed pretrial order. That document, prepared by Giant, identifies as a fact adduced by Ellett to support her claims in federal court, the same allegation made by Ellett in her answer to the interrogatory. It also asserts that as a defense "Giant proposed to prove, or rely upon," *inter alia*, that:

> Giant's submissions regarding [Ellett's] unemployment compensation claim were independent of considerations stemming from [her] EEOC charge. Giant's representations were completely truthful and [Ellett] was not thereby disqualified from receiving unemployment compensation benefits.

We do not know whether this "proposed pretrial order" became in fact the actual pretrial order signed by the court. Even if it did, we cannot be sure that the truthfulness and effect of Giant's representations were indeed litigated when the federal case was tried. Ellett appears to admit that the misrepresentation issue in some fashion may have been before the federal court, but, she says, "[a]ny facts relating to Giant's misrepresentations to the Employment Compensation Commission [*sic*] were presented solely for the purpose of showing Giant's continued harassment of Mrs. Ellett because of her marriage and her relationship with a black co-employee."

If the issue of the truthfulness of Giant's unemployment compensation representation was in fact before the federal court for any purpose, and was decided there,

collateral estoppel would bar the relitigation of that issue between the same parties in this case. But, assuming the issue was litigated, how was it decided? If the decision was in favor of truthfulness, Ellett could not relitigate it. If the decision was that the representation was untruthful (a possible conclusion, since it appears that Ellett succeeded in her harassment claim in federal court), it would be Giant, not Ellett, that would be collaterally estopped from relitigating the issue—for collateral estoppel can operate as a sword as well as a shield. 1 *Restatement (2d) Judgments*, § 27 comment a (1982); Comment, *Res Judicata: The Shield Becomes a Sword*, 1964, Duke L.J. 402. The difficulty is, we do not know how the question was decided in the federal court, if it was, indeed, tried there. As a consequence, we cannot say, on this record, nor should the trial court have held, that Count II is barred by collateral estoppel. The court could not conclude that Giant was entitled to judgment, as a matter of law, on that basis. Md.Rule 2–501(e).[5]

To say that the record before us does not warrant entry of summary judgment for Giant on Count II on the basis of collateral estoppel is not, of course, to say that Giant is precluded from asserting this defense. If Giant produces proper portions of the record in the federal case, and if this record shows, for example, that the question of the truthfulness of its unemployment compensation representation was decided in its favor, it may still prevail. We hold only that on the inadequate record before us Giant was not

---

**5.** Although, as we have seen, there is another basis for affirming the trial court's judgment for Giant on Count I, for the reasons we have just explained, it was error to do so on the basis of collateral estoppel. Moreover, there was a dispute of fact as to whether the abusive discharge issue had been tried in the federal court. Ellett's affidavit flatly asserts that "[n]o issues involving abusive discharge ... were tried before the United States District Court for the District of Maryland." That factual dispute alone was sufficient to bar a collateral estoppel summary judgment for Giant on Count I. *See O'Hara v. Kovens*, 305 Md. 280, 503 A.2d 1313 (1986).

entitled to summary judgment on the basis of collateral estoppel.

Having rejected Giant's alternative bases for affirmance of the judgment in its favor on Count II, we turn to the trial court's basis for entry of that judgment: that the count failed to state a claim upon which relief could be granted.

Giant analogizes Ellett's Count II claim to one essentially of the tort of intentional interference with contractual relations. Since, it argues, there was no contract for the payment of unemployment benefits between Ellett and the State, there is no cause of action. Giant overlooks the fact that "[a]n action may exist for the malicious or wrongful interference with the economic relationships of another, notwithstanding the absence of a breach of contract," R.P. Gilbert, P. Gilbert and R.J. Gilbert, *Maryland Tort Law Handbook*, § 7.6 (1986) and even where no contract at all is involved. *Natural Design, Inc. v. The Rouse Co.*, 302 Md. 47, 69–70, 485 A.2d 663 (1984). Such a tort is sometimes described as "interference with prospective advantage." W. Keeton, *Prosser and Keeton on Torts*, § 130 (5th ed. 1984). Its elements are:

> (1) intentional and wilful acts;
>
> (2) calculated to cause damage to the plaintiffs in their lawful business;
>
> (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

*Natural Design*, 302 Md. at 71, 485 A.2d 663 (quoting *Willner v. Silverman*, 109 Md. 341, 355, 71 A. 962 (1909), quoting *Walker v. Cronin*, 107 Mass. 562 (1881)). In Count II Ellett has in substance alleged all of these elements, with the possible exception of the second: that Giant's acts were "calculated to cause damage to [Ellett's] lawful business." We believe, however, that the charge that Giant's untruth-

ful statement of the reasons for Ellett's termination improperly deferred her receipt of unemployment compensation is sufficient to allege that element of the tort.

■ Prior to Ellett's discharge her "lawful business" was working for Giant. When she was fired, that "lawful business" entitled her to a prospective advantage—the receipt of unemployment compensation benefits.[6] If she can prove the facts she alleges in Count II, she will have proved that an intentional falsehood by Giant postponed her receipt of a monetarily determinable prospective advantage based on her former business relationship with Giant. We hold that such proof would satisfy the elements of the tort of interference with economic relationship or prospective advantage.

Giant further argues that the legislature has committed to the Employment Security Administration "the policing of the filing of these claims" and that the criminal penalty provided by Art. 95A, § 17(b) should be the exclusive "remedy" for a violation of that subsection. The subsection provides criminal penalties (a fine of $50 to $500, imprisonment for not longer than 90 days, or both) for an "employing unit or any officer or agent of an employing unit ... who makes a false statement or representation knowing it to be false ... to prevent or reduce payment of benefits to any individual entitled thereto...."

■ In *Townsend v. L.W.M. Management, Inc.*, 64 Md. App. 55, 62–63, 494 A.2d 239, *cert. denied*, 304 Md. 300, 498 A.2d 1186 (1985), we rejected the argument that Art. 100, § 95 (prohibiting a polygraph examination as a condition of employment) provided the exclusive remedy for violation of

---

6. We are aware that under some circumstances a former employee may be disqualified for benefits. Art. 95A, § 6. Giant does not claim, in this case, that any such circumstance exists—unless it is that Ellett voluntarily quit. The truthfulness of that statement is, of course, at the very heart of Ellett's Count II claim.

that section. *See also Moniodis v. Cook, supra.* Section 95, like Art. 95A, § 17(b), provides criminal penalties for its violation. Section 95 allows but does not require the Attorney General to prosecute certain civil suits arising under it. Section 17(b) contains no such provision. We pointed out that the statutory remedy of § 95 "is far from comprehensive" and that "it does not apply to a class of persons protected by its provisions." 64 Md.App. at 63, 494 A.2d 239. Those observations are pertinent here. In point of fact, although § 17(b) imposes a duty of truthfulness on the employer, a duty clearly intended to protect the employee, it provides no remedy whatsoever to a former employee harmed by the very lack of truthfulness proscribed by the subsection. We see no legislative intent to make the criminal penalties exclusive. Indeed, the legislature has contemplated the possibility of civil actions based on some portions of the Unemployment Compensation Law; it has prohibited certain defamation actions in the absence of falsity and malice. Art. 95A, § 12(g)(2). This express limitation of a cause of action for defamation by the grant of a qualified privilege shows that the General Assembly knew how to restrict a civil action based on Art. 95A provisions. It did not attach any such restrictions to § 17(b). *See also Lally v. Copygraphics,* 173 N.J.Super. 162, 413 A.2d 960 (1980), *aff'd,* 85 N.J. 668, 428 A.2d 1317 (1981) (common law action for retaliatory discharge in violation of worker compensation law not precluded despite availability of criminal and administrative remedies under that law); *and see* 4 *Restatement (2d) Torts* § 874 A (1979).

We hold, then, that Count II of Ellett's complaint states a cause of action cognizable in Maryland. It remains to be seen whether she can prove it.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. EACH PARTY TO PAY ONE–HALF THE COSTS.