NORFOLK SHIPBUILDING & DRYDOCK CORPORATION, Petitioner,

v.

Robert T. NANCE, Respondent.

No. 87-3892.

United States Court of Appeals, Fourth Circuit.

Argued July 6, 1988.

Decided Sept. 27, 1988.

F. Nash Bilisoly, IV, Thomas M. Lucas (Vandeventer, Black Meredith & Martin, Norfolk, Va., on brief) for petitioner.

Willard James Moody, Jr. (Moody, Strople & Lawrence, Portsmouth, Va., on brief) for respondent.

Before WINTER, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

Norfolk Shipbuilding & Drydock Corporation (Norfolk) petitions to set aside an order of the Benefits Review Board (the Board) affirming the decision and order of an Administrative Law Judge that required Norfolk to reinstate Robert T. Nance to his former position with back pay and to pay a penalty to the Deputy Commission.[1] The decision and order were entered pursuant to § 49 of the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. § 948a (1976) (the Act.).[2] The ALJ found that Nance had proved that Norfolk retaliated against him in violation of § 49 of the Act by discharging him from his job after the parties entered into an agreement to settle Nance's pending claims for disability compensation, age discrimination and dis-

---

1. Nance v. Norfolk Shipbuilding and Dry Dock Corporation, No. 86–2436, 20 Ben.Rev.Bd.Serv. (MB) 109 (Nov. 23, 1987)

2. That statute, in pertinent part, reads as follows:

It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer, or because he has testified or is about to testify in a proceeding under this Act. Any employer who violates this section shall be liable to a penalty of not less than $100 or more than $1,000, as may be determined by the deputy commissioner. All such penalties shall be paid to the deputy commissioner for deposit in the special fund as described in section 44, and if not paid may be recovered in a civil action brought in the appropriate United States district court. Any employee so discriminated against shall be restored to his employment and shall be compensated by this employer for any loss of wages arising out of such discrimination: Provided, That if such employee shall cease to be qualified to perform his duties of his employment, he shall not be entitled to such restoration and compensation....

crimination under § 49, and a grievance to his union.

The principal questions before us are whether testimonial evidence purportedly demonstrating that Nance voluntarily agreed to quit his job as partial consideration for the settlement was erroneously excluded by the ALJ, and whether the Board erred in sustaining the ALJ's finding that Norfolk had the requisite discriminatory intent to violate § 49.

We perceive no reversible error on the part of the ALJ or the Board, and conclude that the Board's order should be affirmed and enforced.

## I.

On January 13, 1983, Norfolk and Nance entered into an agreement to settle Nance's various claims against Norfolk for a lump sum payment. They stated the terms of the settlement on a government settlement form, Form LS–471, signed by their respective counsel, and submitted it to the Deputy Commissioner, all as required by 33 U.S.C. § 908(i) and 20 C.F.R. § 702.241–243. On the same day, the agreement was approved by Deputy Commissioner Basil Voultsides of the Office of Workers' Compensation Programs. As the ALJ found, the LS–471 did not contain a "provision expressly or impliedly permitting Employer to discharge Claimant after consummation of the settlement." In addition to making no mention that Nance would be discharged or that he would quit his employment, the parties described the type of employment that Nance, despite his injuries, could still perform. Shortly after March 7, 1983, Nance, who had been in lay-off status, received a letter from Norfolk advising him that his job had been terminated and all of his insurance benefits had been cancelled. Before the ALJ, Norfolk proffered evidence that as part of the settlement Nance and it had verbally agreed that Nance's employment would be terminated. Nance's proffered evidence was a denial of the existence of any such agreement. The ALJ ruled that Norfolk's evidence was inadmissible and he refused to receive it.

Noting that Paragraph IV of Form LS–471 provides for "Action of the Deputy Commissioner" in order to make the settlement effective, the ALJ concluded that settlement procedures under the Act clearly contemplated that the complete agreement must be set forth in writing as a prerequisite to approval:

[T]he text of an LS–471 makes it clear that agreements extrinsic to that document are not to be considered in the approval process. It is apparent from the face of the LS–471 that it is intended to be the complete and integrated statement of the agreement between Claimant and Employer. Nor are there any ambiguities in the document requiring resolution. The LS–471 must, on its face, be considered an integrated agreement incorporating into a single written memorial all prior negotiations. There is accordingly, a conclusive presumption that the LS–471 incorporates the whole contract and is the sole evidence of the agreement. Employer may not, therefore, adduce evidence to show that Claimant had as part of the settlement agreed to voluntary termination of his employment after the settlement in an attempt to vary the terms of the agreement.

Accordingly, he refused to receive Norfolk's evidence of an oral agreement as part of the settlement to terminate Nance's employment.

The ALJ further found the requisite discriminatory intent for a § 49 violation in Norfolk's testimony as to why it sought a voluntary termination agreement. Norfolk employees testified that Norfolk had a practice of settling only those compensation claims in which the employee agreed to leave his or her job. The ALJ decision quoted the following testimony by Norfolk's Director of Safety and Workmens' Compensation:

All lump sum settlements have worked around the employee voluntarily quitting. The employee is usually unhappy at that point, and we want a clean slate.

\*　　\*　　\*　　\*　　\*　　\*

[N]ormally, the employee is unhappy. The medical information is becoming conflicting, that there are several doctors involved. You build a hostility situation where no matter what you do everybody is not going to be happy.

ALJ: This is because of the previous dealings on the claim, is that correct?

Witness: That is correct. So what you arrive at, a lump sum settlement to me means a clean slate for everyone and off you go on with the rest of your life and we close up our books, and that is it.

\*    \*    \*    \*    \*    \*

ALJ: You are talking about a clean slate. If I understand you correctly is that what you are saying is that you felt that in view of the preceding history of this Workers' Compensation claim that there may have been some friction, and as a result you wanted Mr. Nance out of the company for a clean slate, is that correct?

Witness: That is correct.

On the basis of what he terms "generalized animus against longshore claimants as a class" because of friction engendered in the claim process, and specific testimony that Norfolk wanted a "clean slate" in the case of Nance, the ALJ found that Norfolk discriminated against Nance for filing a compensation claim in violation of 33 U.S.C. § 948a.[3]

Finding sufficient specific evidence of retaliatory intent in the case before him, the ALJ declined to reach the question of whether Norfolk's policy of conditioning settlement on voluntary termination was consistent with § 49. But on appeal, the Board ruled, in addition to affirming the findings and conclusions of the ALJ, that Norfolk's general policy of conditioning settlements upon a termination of employment was a violation of § 49 as a practice running "counter to the beneficent purpose of the Act."

## II.

This appeal presents two issues: whether the ALJ correctly excluded the proffered evidence; and whether there was substantial evidence of discriminatory intent against Nance to hold Norfolk in violation of Section 49, or, in the alternative, whether the Board erred in holding that Norfolk's general policy of conditioning settlement on voluntary termination agreements violated the Act. Because we conclude that the ALJ correctly excluded the proffered evidence of the alleged oral agreement, and because we conclude that there was substantial evidence to support the finding of a violation of § 49 of the Act, we do not address the broader question of whether the Board erred as a matter of law in holding Norfolk's general policy to be a violation of § 49.[4]

## III.

■ In reviewing cases arising under the Act, our standard of review is limited to the determination of whether the ALJ's findings are supported by substantial evidence in the record considered as a whole. If findings are so supported and are not arbitrary, they may not be disturbed. *Dickens v. Tidewater Stevedoring Corp.,* 656 F.2d 74, 76 (4 Cir.1981).

■ The ALJ rejected Norfolk's proffered evidence of an oral agreement partly on the basis of the parole evidence rule. The parole evidence rule is a substantive rule of law, not a rule of evidence, which bars the admission of extrinsic evidence to vary or contradict the terms of a complete and integrated written agreement. While the ALJ referred explicitly to the rule, he also noted that the settlement form itself requires that the Deputy Commissioner approve settlements on the basis of the information disclosed in the form. The Board further noted that the Act both requires such approval and prohibits an employee from waiving rights to compensation ex-

---

**3.** *See* n. 2, *supra.*

**4.** The Board's ruling, in this respect, necessarily encompasses fact patterns, such as a settlement agreement which did list a voluntary termi-

nation as a term of settlement on Form LS–471, which are not present in this case. We think that it is premature in this case to address the issue.

cept through approved settlements. Section 8(i)(1), 33 U.S.C. § 908(i)(1), provides that the settlement be approved only under certain conditions:

> [T]he deputy commissioner or administrative law judge shall approve the settlement within thirty days unless it is found to be inadequate or procured by duress.... No liability of an employer ... shall be discharged unless the application for settlement is approved by the deputy commissioner or administrative law judge....

Claimants are not permitted to waive their right to compensation except through settlements approved by the deputy commissioner, *see* 33 U.S.C. §§ 915, 916. A regulation passed pursuant to the Act, 20 C.F.R. § 702.242(a), expressly provides that the Form LS–471 must be a "self-sufficient" document, and 20 C.F.R. § 702.242(b)(1) further provides that the settlement agreement include "[a] full description of the terms of the settlement....."[5] Thus this appeal presents an even stronger case for the exclusion of evidence not disclosed in the settlement form than a case involving a general application of the parole evidence rule in administrative proceedings. The terms of the settlement agreement, in conjunction with the statutes and regulations that govern its effect, prohibit enforcement of any verbal agreement by Nance to leave his job not included in the settlement terms set forth in the LS–471 agreement.[6] The ALJ and Board were therefore not only justified in regarding the settlement form as a complete, unambiguous, and self-sufficient document, but they would have lacked authority to enforce an extrinsic verbal agreement as part of the Act's approval process, even if the ALJ had admitted evidence of such an agreement and found it credible.

Norfolk argues that the § 49 claim discharged in the settlement agreement refers to the instant legal proceedings. But this can not be so, because it would be absurd for the agreement to anticipate and discharge a § 49 claim which had not yet arisen. Moreover, even if such a vague reference to § 49 somehow anticipated the instant litigation, such a reference would not be a sufficient disclosure under the Act and regulations, *see* 20 C.F.R. § 702.242(b)(1) ("a *full* description of the

---

5. Norfolk contends on appeal that the alleged voluntary termination agreement was not a part of the settlement agreement and therefore should not be held to these statutory procedures. We disagree. The provision of 20 C.F.R. § 702.242(a) that such agreements be self-sufficient mandates that the agreement be included, at least where, as in this case, the alleged agreement to quit was in partial compensation for monies listed in the Form LS–471. 20 C.F.R. § 702.242(a) provides:

> The settlement application shall be a self-sufficient document which can be evaluated without further reference to the administrative file. The application shall be in the form of a stipulation signed by all parties and shall contain a brief summary of the facts of the case to include: a description of the incident, a description of the nature of the injury to include the degree of impairment and/or disability, a description of the medical care rendered to date of settlement, and a summary of compensation paid and the compensation rate or, where benefits have not been paid, the claimant's average weekly wage.

Furthermore, 20 C.F.R. § 702.242(b) requires that the terms of the settlement be set forth in detail:

> (b) The settlement application shall contain the following:

(1) A full description of the terms of the settlement....

(2) The reason for the settlement, and the issues which are in dispute, if any.

    \*    \*    \*    \*    \*    \*

(4) Information on whether or not the claimant is working or is capable of working....

    \*    \*    \*    \*    \*    \*

(6) A statement explaining how the settlement amount is considered adequate.

6. The Deputy Commissioner's approval also contemplates full disclosure of all settlement terms:

> The Deputy Commissioner having considered the foregoing Application for Approval of an Agreed Settlement and *the best interests of the employee concerned having been considered, as required by section 8(i)(A) and (B) of the Act,* it is determined that payment of compensation and/or medical benefits pursuant to the said agreement would be for the best interests of the employee. A compensation order will be prepared by the Deputy Commissioner formally approving this agreed settlement and fixing the amount of the attorney fee. Payment is not to be made by the carrier or the employer until this order is filed in the Office of the Deputy Commissioner. (Emphasis supplied)

terms") (emphasis supplied), of the settlement to allow the Deputy Commissioner to make an informed review of the parties' Form LS–471.

■ Norfolk further contends that because the ALJ and Board found that its practice of seeking voluntary termination as a part of any settlement was evidence of discriminatory intent, both administrative decisions are internally inconsistent in ignoring the alleged application of this practice in the case of Nance. While this line of reasoning may appear persuasive at first glance, a closer analysis of the ALJ and Board's position persuades us that their positions are not internally contradictory. The evidence of Norfolk's general practice of seeking voluntary terminations, and its desire to obtain such an agreement in its negotiations with Nance, is highly probative as to whether Norfolk had the requisite discriminatory intent in discharging Nance. However, the finding of discriminatory intent does not, in itself or by logical implication, entail a finding that Norfolk and Nance did, in fact, enter into such a voluntary termination agreement. Whether or not such an agreement was entered into, Norfolk's testimony on its desire to enter into such an agreement in the case of Nance in order to "clean the slate" of friction or hostility associated with his claim is substantial evidence of discriminatory intent.

We therefore conclude that the finding that Norfolk had discriminatory intent and thus violated § 49 is supported by substantial evidence and should not be disturbed.

## IV.

Norfolk's further contentions that the Board's decision is contrary to the policy of the Act and unlawfully modifies the settlement agreement are, in light of what is said above, without merit.

AFFIRMED; ENFORCEMENT GRANTED.

MURNAGHAN, Circuit Judge, dissenting:

The Norfolk Shipbuilding and Drydock Corporation (Norfolk Ship) made a slight but significant error, which may or may not be decisive here insofar as the order to reinstate Robert T. Nance with back pay is concerned. It simply failed to cross all the t's and dot all the i's by not complying exactly with the Government's settlement form LS–471. The ALJ, the Benefits Review Board, and most recently the majority have employed various legal and logical gymnastics to convert that failure at contract integration into a breach by Norfolk Ship of the statutory prohibition on employers from discriminating against employees who file Longshore and Harbor Workers' Compensation Act (LHWCA) claims.

I disagree with the conclusion that there was discrimination as set forth in section 49 of the LHWCA, 33 U.S.C. § 948a, by reason of supposed retaliation by discharging Nance from his job after the parties entered into an agreement to settle pending claims for disability compensation, age discrimination, discrimination under section 49 and a grievance to his union. I would, therefore, reverse the decision of the Benefits Review Board.

Norfolk Ship believed, as the ALJ agreed, and even the majority leaves unchallenged (since it does not reach the issue) the finding that Norfolk Ship believed that Norfolk Ship could properly condition settlement of LHWCA claims upon voluntary termination of employment by the employee. It was further found that Norfolk Ship has acted uniformly to require termination in every case where such a belief has come into play. In the circumstances, I fail to perceive discrimination, either as retaliation or in any other form, as a result of attempted implementation of that honestly held belief.

Norfolk Ship has discharged Nance on an erroneous belief that he agreed to resign. Since he had not agreed to resign he might have a right to reinstatement, back pay or other damages. However, such rights do not arise under the LHWCA. The LHWCA only provides for reinstatement and back pay when an employee is discriminated against in retaliation for bringing a LHWCA claim. That did not occur in the

present case so reinstatement rights did not accrue under the LHWCA. Rather, an employee was discharged on the erroneous belief that he had agreed to resign. Nance's right to force Norfolk Ship to rectify its error, if it exists, must come from some other source, *e.g.,* a union contract, common or other statutory law. The existence *vel non* of such other rights is not before the Court.

To reach a conclusion of discrimination as the majority has done seems to disregard the holding in *Ellett v. Giant Food, Inc.,* 66 Md.App. 695, 505 A.2d 888 (1986). The LHWCA operates as the workers' compensation law for the District of Columbia. Ellett filed a claim under the LHWCA that was pending when she was discharged from Giant's employ. Several months following the discharge she and Giant settled the LHWCA claim. In that agreement, Ellett agreed that she had no section 49 claim. She later brought an alleged abusive discharge claim. The Court of Special Appeals of Maryland affirmed the entry of summary judgment on that claim in favor of Giant. The court indicated that, when she agreed that she had no section 49 claim, she agreed that she had not been fired in retaliation for claiming compensation. Her statement was tantamount to a release and the court would not allow her later to repudiate it. *Id.* 66 Md.App. at 701–02, 505 A.2d at 871.

In that case, Giant had fired Ellett, and was not prohibited from, after the fact, negotiating an agreement with her that she had not been fired in retaliation for claiming LHWCA compensation. Logically then, an employer should be able to do the reverse under the LHWCA, namely, negotiate a waiver of section 49, *i.e.,* condition the settlement on a right to discharge, prior to making the settlement.

The Board concluded that the LHWCA prohibits such agreements and that even the attempt by Norfolk to negotiate for one is retaliatory. The majority did not reach the issue of whether the LHWCA prohibits such agreements, it concluded that the ALJ properly found discriminatory intent under the facts of the case. Because I believe, and will later show, that the ALJ's finding of discriminatory intent under the facts of the present case is irrational, I reach the issue left open by the majority.[1] Not only was the Board's decision that the LHWCA prohibits the employer from negotiating for and accepting an employee's resignation as a term of a settlement of LHWCA claims without citation, but the only reason that it gave for its decision was its belief that the beneficent purpose of the LHWCA required its result. That conclusion is at odds with the general federal policy in favor of settlements, at odds with analogous authority and at odds with the LHWCA.

1. It is irrational and arbitrary to conclude that Norfolk Ship discriminated against Nance while simultaneously concluding that it acted pursuant to what it believed was its contractual right. In order for such conduct to be "discriminatory" for section 49 purposes, the acquisition itself of the contractual right and hence the belief of its existence must be forbidden. The Board recognized that logical necessity and found that the acquisition of the right is forbidden. I recognize that logical necessity *vel non* must be pursued and reach the issue but disagree with the Board's interpretation of the LHWCA.

The majority suggests that the logical quagmire that I posit while persuasive at first glance disappears on further reflection. For me it does *not disappear. The import of the majority's* reflection is somewhat lost on me, but it suggests that the inconsistency can be removed if one considers that Norfolk Ship and Nance may *not* have agreed that Nance would resign. *See, supra,* at 187. Whether Norfolk Ship and Nance agreed for Nance to resign is not relevant to this claim of discrimination. As the majority has

persuasively pointed out, because such an agreement was not made part of the Form LS–471, Norfolk Ship and Nance did not *enforceably* agree for Nance to resign.

The majority suggests that whether they actually agreed for Nance to resign and made a mistake in integration or whether they never agreed *is important to resolution of whether* Norfolk Ship discriminated against Nance. It is not. What is critical in the present case alleging discrimination is Norfolk Ship's intent. *Holliman v. Newport News Shipbuilding and Dry Dock Co.,* 852 F.2d 759 (4th Cir.1988). The ALJ found that Norfolk Ship believed that Nance had agreed to resign. That is the critical inquiry, and it was resolved by the ALJ.

If Norfolk Ship believes that Nance agreed to resign it does not discriminate against him when it terminates him *unless* its acquisition of the right (and belief) that Nance agreed to resign is itself discriminatory under the LHWCA. That issue must be reached to decide the case.

Those cases considering an analogous issue—whether an employee can waive his or her remedial rights in settlement of an employment discrimination claim find that employees can waive. The cases are analogous to the LHWCA because an agreement to waive remedial rights like reinstatement and back pay under equal employment opportunity laws is equivalent to an agreement to waive a section 49 claim or an agreement to resign. All mean that the claimant will not invoke a right to challenge a dismissal. Courts construing Title VII and the like have not adopted a flat prohibition on the waiver of remedial rights as the Board did in the present case. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1021–22 n. 15, 39 L.Ed.2d 147 (1974) (presuming that employee can waive a cause of action under Title VII as part of a voluntary settlement); *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339 (11th Cir.1983); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207 (5th Cir. 1981) (holding that an oral agreement to settle a Title VII claim is enforceable).

Additionally, to the extent that there is a difference between settlement of employment discrimination claims and LHWCA claims, that difference militates in favor of more generous court recognition of LHWCA settlements. Under the LHWCA, settlements are void unless approved by the deputy commissioner or the ALJ. 33 U.S.C. §§ 915, 908(i).[2] Therefore, it is less likely that employers will overreach with LHWCA settlements since neutral third party approval of them is first required. Further, section 8 of the LHWCA, 33 U.S.C. § 908, in providing for settlement approval does not differentiate among the LHWCA claims that can be settled. There is no suggestion that while other LHWCA claims can be settled, a section 49 claim cannot be settled.

Although the Board's approval of the ALJ's decision is not supported by the proffered justification, I would, nevertheless, consider any other possible reasons to support the ALJ's decision. The ALJ offered

another. He found that while a section 49 waiver or an agreement to resign might not flatly be prohibited, there was no such agreement in the present case, and that Norfolk Ship's termination of Nance was retaliatory since done pursuant to a Norfolk Ship standard policy of terminating all lump sum settlement recipients. That justification is the one upon which the majority bases its affirmance.

While I agree with the first part of the conclusion of the ALJ, that there was no enforceable agreement of Nance to resign, I cannot agree with the second. The ALJ found as a fact that Norfolk Ship acted on a sincere belief, later proved erroneous, "that a voluntary quit by Mr. Nance was included in the settlement." 19 Ben.Rev. Bd.Serv. (MB) 115(ALJ), 124(ALJ) (Aug. 4, 1986). Yet he nonetheless found discrimination, a section 49 violation, by virtue of Norfolk Ship's uniform practice of asking a claimant to give up his or her right to employment in order to settle a LHWCA compensation claim. That finding is arbitrary and should be set aside. *Dickens v. Tidewater Stevedoring Corp.*, 656 F.2d 74, 76 (4th Cir.1981).

On the one hand the ALJ assumed that Norfolk Ship could, upon an honest belief that it was entitled to do so, ask for, negotiate and accept a waiver of an employee's right to employment as part of a settlement. It found that Norfolk Ship thought that it had, in the present case, done so. Yet when Norfolk Ship attempted to act pursuant to that belief, though implementation was flawed, the ALJ found the action impermissibly retaliatory. That elevates form over substance and irrationally whipsaws Norfolk Ship. Under the ALJ's resolution, Norfolk Ship's behavior would have been proper, the resignation provision enforceable and the section 49 claim barred had the resignation provision been properly written into the settlement agreement. The ALJ's resolution allows the mere failure of integration into the written document to give rise to a retaliation claim,

---

**2.** *See supra* at 185–186 where the majority opinion discusses procedures incident to settlement approval.

while admitting that including such a provision would have been in order. The failure to put a term requiring termination of employment into the agreement means that Norfolk Ship cannot enforce that term because it is not part of the agreement. Thus, Norfolk Ship had no right to terminate Nance on the basis of the settlement agreement. Since Norfolk Ship did not have that right it may have to rehire him. However, such a right to reinstatement would come, not' under the LHWCA, but under an employment agreement like a union contract or perhaps under a common law or other statutory right. If Nance has such a right he can enforce it under its terms. I offer no opinion on the existence or enforceability of such a right since the issue was not presented to this Court.

In the present case, Nance attempts to enforce a right to continued employment of another sort, the right to continued employment after making a LHWCA claim. That right is breached if the employer fires a claimant because he filed a claim. But that is not this case. Norfolk Ship fired Nance because it thought that he had agreed to be terminated. It was an incorrect reason but it was not an impermissible one.

A section 49 claim necessarily looks to the intent of the employer. The employer must have a retaliatory intent. *Holliman,* at 760-761 (citing *Geddes v. Benefits Review Board,* 735 F.2d 1412 (D.C.Cir.1984)). Here, the ALJ found that Norfolk Ship believed that it had a contractual right to terminate Nance. That is conclusive proof of lack of retaliatory intent, of intent to discriminate.

The ALJ (and the majority in its affirmance) instead, in a twist of logic, somehow inferred that the policy of asking for, negotiating and accepting such waivers to continued employment was tantamount to a discriminatory intent. That inference might be appropriate in a case in which there is little or no direct evidence regarding the employer's intent, but that is not the case at bar. The ALJ concluded that Norfolk Ship terminated Nance because it thought it had a contractual right to do so. To infer in the face of that finding that the termination was in retaliation for claiming compensation under the LHWCA is irrational and arbitrary and should be set aside.

I would reverse the Board and, therefore, dissent.