MALCOLM SILLARS *vs.* PERRY COLLIER.

Essex. November 7. 1889. — February 25, 1890.

Present: FIELD, DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Slander — Bribery of Public Officer — Scandalum Magnatum.*

A declaration for slander alleged that, at a largely attended meeting of a town forming part of a representative district, the defendant, a citizen of the district in another town, the question of whose division was before the Legislature, publicly, falsely, and maliciously accused the plaintiff, a member of the House of Representatives from that district, of accepting a gift and of agreeing in return therefor to vote for such division, the words spoken being substantially as follows: "I am sorry that the representative from this district (meaning the plaintiff, who was the only representative from said district) has had a change of heart; sometimes (slapping his hands on his pocket) a change of heart comes from the pocket"; that the words "sometimes a change of

heart comes from the pocket" were intended to express that the plaintiff, originally supposed to be opposed to such town division, had changed his original views from corrupt considerations of money actually paid, or of promises of future personal advantage; and that the plaintiff was in consequence exposed to great contumely and his good name injured in the presence of his fellow citizens and constituents. *Held,* that the words charged in the declaration as spoken by the defendant, when taken in the light of the extrinsic facts averred, did not bear a meaning which was defamatory.

The doctrine of *scandalum magnatum* has never been adopted in this Commonwealth.

TORT. The amended declaration was as follows: —

" And the plaintiff says that the defendant publicly, falsely, and maliciously accused the plaintiff of corruptly accepting a gift and gratuity, and of accepting a promise to make some gift and do some act beneficial to the plaintiff, under an agreement and with an understanding that his vote, opinion, and judgment should be given in support of a bill to incorporate the town of Beverly Farms, a question then depending in the Massachusetts House of Representatives, whereof said Sillars was then a member from the twenty-second district of Essex County (composed of the towns of Danvers and Middleton), by words spoken of the plaintiff substantially as follows, to wit: 'I am sorry that the representative from this district (meaning the plaintiff, who was the only representative from said district) has had a change of heart. Sometimes (slapping his hands on his pocket) a change of heart comes from the pocket.' And the plaintiff says that if the natural import of such words, without further explanation, or reference to facts understood, but not mentioned, or parts of any conversation not stated, is not intelligible without further explanations, the plaintiff says and will show that many citizens of the town of Beverly, including the defendant, being exasperated by the independent position of the representative from Danvers, had habitually charged him with acting from corrupt motives in the discharge of a public duty which he was conscientiously seeking to perform, and were disappointed in their expectation that he would favor their interests, and that the words 'sometimes a change of heart comes from the pocket' were intended to express that the plaintiff (originally supposed to be opposed to this scheme for the division of the town of Beverly) had changed his original views, not in the exercise of honest judgment, but from corrupt considerations either of money

and valuable things actually paid, or of promises and induce-
ments of future favor and personal advantage to be expected,
under an agreement and with an understanding that his vote and
legislative influence should be corruptly bestowed, against the
dignity of the Commonwealth and contrary to the form of the
statute in such case made and provided, whereas in truth and in
fact the said Sillars only exercised his honest judgment, as it
was his right and duty to do, and for which he is not in any way
to be reproached or intimidated or exposed to censure, obloquy,
or ridicule. But he says that these words were spoken before a
fully attended meeting of the inhabitants of the town of Danvers,
duly warned according to law, to consult upon town affairs, the
defendant not being a citizen of said town, but one who imperti-
nently intruded himself upon the deliberations of the qualified
voters, and there and then publicly, falsely, and maliciously ut-
tered and spoke the scandalous words in the presence and hear-
ing of a large number of persons there assembled; — so that by
reason of the premises the plaintiff was exposed to great con-
tumely, and his good name injured in the presence of his fellow
citizens and constituents; and the plaintiff further says that it is
for the interest and true dignity of the Commonwealth that the
scandal of magnates shall not be permitted, and that public offi-
cers and legislators shall not be wantonly and unjustly assailed
for the faithful performance of high trusts."

The defendant demurred to the declaration on the grounds
that the matters therein alleged do not constitute a legal cause
of action; that the words therein alleged to have been spoken
do not appear to be capable of the alleged slanderous inter-
pretation in said declaration put upon them, or of any slander-
ous interpretation; that it does not appear by said declaration,
or by anything therein contained, that the alleged slanderous
words, if spoken, were spoken of or concerning the plaintiff;
that the alleged slanderous words do not contain any imputa-
tion of crime, and are not slanderous *per se*, and said declaration
contains no allegation or specification of special damage; and
that·said declaration is vague, uncertain, irrelevant, and argu-
mentative.

The Superior Court sustained the demurrer; and the plaintiff
appealed to this court.

*S. H. Phillips*, for the plaintiff.

*H. F. Hurlburt*, (*D. W. Quill* with him,) for the defendant.

C. ALLEN, J.   We are ready to assume in favor of the plaintiff, that by the declaration it is intended to aver that he was a member of the House of Representatives, and that the words set forth were spoken of him with reference to his official position. This being so, no averment of special damages was necessary, provided the words are defamatory, and to make them defamatory it is not necessary that they should import a charge of crime.   It would be sufficient if they imported such misconduct as would expose him to expulsion, or even to censure, from the House, and we are inclined to think also that it would be sufficient if they imported such conduct as would, by the general sense of the community, be deemed immoral, or discreditable in such a way as clearly to impair his influence and lessen his position and standing as a public man, and thus to affect him injuriously as a member of the Legislature.   But in applying this last suggestion, it is obvious that some caution is necessary, since freedom of speech and of the press is guaranteed by the Constitution, (U. S. Const., Amendment I.; Const. Mass., Arts. XVI. and XIX., Declaration of Rights,) and " entire freedom of discussion, in respect to the character and conduct of public men, and of candidates for public favor, is deemed essential to the judicious .exercise of the right of suffrage, and of that control over their rulers, which resides in the free people of the United States." 2 Kent Com. 17.   Bearing this in mind, it is not unreasonable to hold that, in order to be defamatory of one in respect to his public office, the spoken words must go at least so far as to impute to him some incapacity or lack of due qualification to fill the position, or some positive past misconduct which will injuriously affect him in it, or the holding of principles which are hostile to the maintenance of the government.

Looking at the words set forth in the plaintiff's declaration in the light of the extrinsic facts which he avers, we do not find them fairly capable of the meaning which the plaintiff ascribes to them, or of any meaning which is defamatory within the sense above expressed.   We are not to travel into the region of conjecture, but must confine ourselves to the words themselves, with the other facts contained in the declaration.   There is in them

no suggestion that the plaintiff has changed his vote, or that he has voted at all, upon the question of the division of the town of Beverly, or made any speech in the Legislature or elsewhere, or taken any public action, or solicited any other member of the Legislature to favor a particular side, or, in short, that he has done anything whatever by way of action or of promise of action in support of the measure for dividing the town. The whole charge in relation to his change of heart relates merely to what was in his heart, — that is, to what he was capable of doing, or at most to what he had a purpose of doing, in the future. And the statement that " sometimes a change of heart comes from the pocket " does not, when fairly considered, import that the plaintiff's change of heart had come from any actual bribery or pecuniary inducements already received, or indeed anything further than that in the speaker's opinion the plaintiff would change his conduct on account of an expectation of a future pecuniary benefit to himself. The words do not fairly imply any actual fact which has happened at the time of speaking them, and which involves corruption on the plaintiff's part, but only at most that in the speaker's opinion the plaintiff is corrupt in his heart, and open to pecuniary inducements. To get out of them anything beyond this, one must travel beyond the words themselves, and the facts set out in the declaration.

The expression of the defendant's opinion that the plaintiff as a member of the Legislature is of such a disposition, wavering in mind, and open to change his course from improper motives and inducements, is not actionable, without averment and proof of special damages. It is one of the infelicities of public life, that a public officer is thus exposed to critical and often to unjust comments; but these, unless they pass the bounds of what the law will tolerate, must be borne for the sake of maintaining free speech. In the various cases which have been cited to us, or which have come under our observation, where under such circumstances actions have been maintained, the words have been considered to contain a charge of positive misconduct. Such, for instance, were *Wilson* v. *Noonan*, 23 Wis. 105 ; *Powers* v. *Dubois*, 17 Wend. 63 ; and *Littlejohn* v. *Greeley*, 13 Abb. Pr. 41. But where the words spoken have simply

amounted to the opinion of the speaker, however strongly expressed, as to the disposition of the public officer, the actions have been held not to be maintainable. *Onslow* v. *Horne*, 3 Wils. 177. *Hogg* v. *Dorrah*, 2 Port. (Ala.) 212. In like manner, words conveying a suspicion that a person, not a public officer, has committed a crime, are not actionable. *Simmons* v. *Mitchell*, 6 App. Cas. 156.

The plaintiff further avers in his declaration, that it is for the interest and true dignity of the Commonwealth that the scandal of magnates shall not be permitted, and relies on the old doctrine of *scandalum magnatum* to support his declaration. Mr. Odgers, in his work on Libel and Slander, says that he believes no such action has been brought (in England) since 1710. In Townshend on Slander and Libel, (4th ed.) § 138, it is said that, *scandalum magnatum* is not known in the United States. In *Hogg* v. *Dorrah, ubi supra*, the plaintiff's counsel expressly disclaimed relying upon this doctrine. The plaintiff has cited no decision or textbook to support his contention that this special remedy exists in this country, and we are of the opinion that it has never been adopted in Massachusetts. See also *Reeves* v. *Winn*, 97 N. C. 246.

*Judgment for defendant affirmed.*