## DIENER ENTERPRISES, INC. *v.* GERALD J. MILLER ET AL.

[No. 23, September Term, 1976.]

*Decided April 6, 1977.*

The cause was argued before DAVIDSON, MELVIN and LISS, JJ.

*Eugene P. Smith,* with whom were *Leonard T. Kardy* and *Judith D. O'Neill* on the brief, for appellant.

*Thomas Penfield Jackson,* with whom were *Arthur C. Elgin, Jr.,* and *Jackson, Campbell & Parkinson* on the brief, for appellees.

DAVIDSON, J., delivered the opinion of the Court.

In February, 1966, the appellant, Diener Enterprises, Inc.

(buyer), and the appellees, Gerald J. Miller, et al. (sellers), entered into negotiations for the sale of an I-1 (Light Industrial) zoned property. On 24 February 1966, the contract of sale was executed. An addendum to that contract was signed by the buyer and signed and sealed by the sellers on 1 March 1966. On 15 August 1966, the property was conveyed. In the Circuit Court for Montgomery County, the buyer sued the sellers for damages allegedly resulting from either fraud (count one) or breach of contract (count two). Judge H. Ralph Miller granted the sellers' motion for summary judgment on both counts.

I

Fraud (Count One)

In its declaration, the buyer alleged that at various times before the conveyance of the property the sellers made certain misrepresentations, which, in pertinent part, are as follows: 1) that under the I-1 zoning category an apartment hotel could be built "as a matter of right;" 2) that "a good and valid permit" would issue for the construction of an apartment hotel; and 3) that "no legal action had been or would be filed" to prevent such permit from issuing. It claimed that it was damaged because an apartment hotel could not be constructed on the land.

The trial court, concluding that *Marathon Builders, Inc. v. Polinger*,[1] was dispositive, determined that the buyer had no right to rely upon any of those alleged misrepresentations. Assuming without deciding that *Marathon* establishes that a buyer of real property has no right to rely upon representations concerning the uses to which property may be put under applicable zoning and subdivision laws, that case is not dispositive. *Marathon* does not establish that a buyer may not rely upon a representation either that a "good and valid permit" would issue or that legal action had not or would not be filed to prevent a building permit from issuing. We shall, however, affirm on the ground that the buyer

---

1. 263 Md. 410, 423, 283 A. 2d 617, 624 (1971).

failed to show that any of the alleged misrepresentations was the proximate cause of its injury.[2]

The Court of Appeals and this Court have previously considered the element of causal connection in fraud cases.[3] In *Lustine Chevrolet v. Cadeaux*,[4] this Court said:

> "It is well settled in Maryland that in order to recover in an action for fraud, the plaintiff must show that: 1) the representation made was false; 2) its falsity was either known to the speaker, or the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual knowledge; 3) it was made for the purpose of defrauding the person claiming to be injured thereby; 4) such person not only relied upon the misrepresentation but had a right to rely upon it in the full belief of its truth, and would not have done the thing from which the injury resulted had such misrepresentation not been made; and 5) he actually suffered damage directly resulting from such fraudulent misrepresentation. . . . 'It is well settled by all the authorities that the fraud must work an actual injury on the party complaining . . . .' . . . Recently the Court of Appeals . . . explicated the concept of causal connection in fraud cases when it said:
>
> 'One suing for fraud or deceit must establish that he sustained damage *by reason of the fraud*, and that his injury was the natural and proximate consequence of his reliance on the fraudulent act.' (Citations omitted.)

---

2. A decision which is correct for a reason other than that relied upon by the trial court will not be disturbed on appeal. Aubinoe v. Lewis, 250 Md. 645, 649, 244 A. 2d 879, 881 (1968); Lease v. Upper Potomac River Comm., 179 Md. 543, 544, 20 A. 2d 498, 499 (1941); Robinson v. State, 17 Md. App. 451, 460, 302 A. 2d 659, 664 (1973).

3. Empire Realty Co., Inc. v. Fleisher, 269 Md. 278, 284, 305 A. 2d 144, 147 (1973); Reynolds v. Evans, 123 Md. 365, 367, 91 A. 564, 565 (1914); Lustine Chevrolet v. Cadeaux, 19 Md. App. 30, 35, 308 A. 2d 747, 750-51 (1973).

4. 19 Md. App. 30, 34-35, 308 A. 2d 747, 750-51 (1973).

> Thus it is clear in Maryland that in order to recover for fraud, the plaintiff must show not only that he would not have performed the act from which the injury resulted but for the misrepresentation, but *also that the fact misrepresented was the proximate cause of the injury.*" (Emphasis in original. Citations omitted.)

Here, assuming that there were misrepresentations as to the then applicable zoning regulations, the existence of a valid building permit and the pendency of litigation, it would not be sufficient for the buyer to show only that it had the right to rely upon these misrepresentations and would not have purchased the property but for them. Additionally, it would have to show that any or all of these misrepresentations made it impossible to build an apartment hotel, thus causing the alleged injury.

Viewed in the light most favorable to the buyer,[5] the facts here neither show nor support a rational inference that any or all of the alleged misrepresentations caused the buyer's injury. The record shows that on 15 September 1965, the then owner's application for a building permit authorizing the construction of an apartment hotel on the I-1 zoned property was denied. On 30 November 1965, the County Board of Appeals for Montgomery County decided that an apartment hotel was a permitted use in the I-1 zone and, in effect, required the permit to issue. On 16 December 1965, Montgomery County appealed from this decision. On 23 February 1966, Montgomery County agreed to dismiss its appeal and to issue a building permit authorizing the construction of an apartment hotel containing a maximum of 472 dwelling units. A provision of this agreement required that within 90 days a nearby property owner execute and record enforceable covenants to preserve and maintain 5.5

---

**5.** Dietz v. Moore, 277 Md. 1, 4, 351 A. 2d 428, 431 (1976); Lawless Adm'rx v. Merrick, 227 Md. 65, 70, 175 A. 2d 27, 30 (1961); Baltimore County, Maryland v. Archway Motors, Inc., 35 Md. App. 158, 160, 370 A. 2d 113, 114 (1977).

acres of land as open space to be used for recreational and park purposes.

On 25 January 1966, the County Council for Montgomery County enacted an ordinance which prohibited the construction of apartment hotels on land zones other than R-CBD (Multiple-Family, Central Business District Residential) unless preliminary plans had been filed by 25 January 1966, and final working plans were filed by 25 April 1966. On 1 July 1966, a building permit for the construction of an apartment hotel on the subject property was issued. At the buyer's request, it was extended for six months from 1 January 1967.

On 18 April 1967, the County Council amended the text of the zoning ordinance to provide, in pertinent part, that permits already issued for the construction of apartment hotels in other than an R-CBD zone "shall become null and void within ninety days unless construction has proceeded beyond excavation and foundation work and the right to use such land for an apartment hotel shall be terminated." On 28 July 1967, the buyer was notified that, because construction had not progressed to the extent required by the ordinance, its permit was "null and void" and its "right to develop this property for an apartment hotel ha[d] terminated."

The record shows that until 18 July 1967, the buyer was in possession of a building permit which authorized construction of an apartment hotel on the subject property. Until that time, the applicable zoning regulations permitted such construction under appropriate circumstances. There had been no challenge to the validity of the permit and there had been no challenge to the County's dismissal of its appeal. Thus, there is nothing to show that before 18 July 1967, the buyer could not have built an apartment hotel on the subject property. Consequently, the record establishes that the sole cause of the termination of the buyer's right to build an apartment hotel was its failure to comply with the provisions of the 18 April 1967 ordinance. Under these circumstances, any misrepresentations which may have been made by the sellers cannot be regarded as the cause of the buyer's inability to build an apartment hotel.

Subsequently, there was a challenge to the dismissal of the County's 16 December 1965 appeal from the Board of Appeals' 30 November 1965 decision, which had, in effect, required the issuance of a building permit for an apartment hotel on the subject property. In a letter dated 20 September 1967, the then County Attorney for Montgomery County indicated that the provision of the 23 February 1966 agreement to dismiss, which required the execution and recording of enforceable covenants within 90 days, created a condition precedent which had not been fulfilled. He asserted that the County was "no longer bound" by the agreement. More particularly, he stated that, because the condition had not been fulfilled, "Montgomery County did not and has not dismissed the appeal." No such appeal was processed.

The County's assertion that litigation was pending because it had not dismissed its appeal was made two months after the buyer's right to construct an apartment hotel had terminated. Thus, "pending litigation" cannot be regarded as the cause of the buyer's inability to build.

We hold that under the circumstances of this case, there were no facts to show a causal connection between the alleged misrepresentations and the harm suffered by the buyer.[6] The trial court was correct in granting a motion for summary judgment.

## II

### Breach of Contract (Count Two)

In its declaration, the buyer alleged that the sellers breached certain express "assurances, representations and warranties." These were, in pertinent part, essentially the same as the statements alleged to be misrepresentations in

---

6. We need not consider the buyer's contention that certain portions of the sellers' affidavit in support of their motion for summary judgment did not comply with Maryland Rule 610 b. The facts set forth in those portions, which allegedly were not based upon personal knowledge of the affiant, are not material.

the fraud count. It again claimed that it was damaged because an apartment hotel could not be constructed on the land.

The trial court concluded that the statute of limitations barred this claim and granted the motion for summary judgment. We shall again affirm on another ground.

In order to recover upon an alleged breach of warranty, when a sale of personal property is involved, it is necessary to show that the breach was the proximate cause of the damage.[7] Assuming without deciding that under appropriate circumstances recovery is possible for a breach of an express warranty when a sale of real property is involved, and applying the same principle, there would be no recovery here. We have previously held that the statements alleged to be misrepresentations were not the cause of the buyer's inability to build an apartment hotel. Similarly, these same statements, even assuming that they were express warranties which were breached, did not cause the buyer's damage. Even assuming without deciding that the statute of limitations did not bar the claim, the trial court was correct in granting the motion for summary judgment.

*Judgment affirmed.*
*Costs to be paid by appellant.*

---

**7.** *See* Erdman v. Johnson Brothers Radio & Television Co., Inc., 260 Md. 190, 195, 271 A. 2d 744, 746 (1970); Sheeskin v. Giant Food, Inc., 20 Md. App. 611, 620-21, 318 A. 2d 874, 880 (1974), *aff'd.*, Giant Food, Inc. v. Washington Coca-Cola Bottling Co., Inc., 273 Md. 592, 332 A. 2d 1 (1975).