567 A.2d 954

John B. GOOCH

v.

MARYLAND MECHANICAL SYSTEMS, INC., et al.

No. 1834, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Jan. 4, 1990.

Raymond Rabin, Washington, D.C., for appellant.

Robert J. Proutt (Anne T. Kelly and Rosenberg Proutt Funk & Greenberg, on the brief), Baltimore, for appellees.

**378**

Argued before GARRITY, ALPERT and POLLITT *, JJ.

GARRITY, Judge.

Over the years, commentators, as well as the judiciary, have attempted to unravel the imbroglio of defamation law as it has developed through early English common law. As one commentator noted:

> [T]he English common law of defamation slowly grew into a forest of complexities, overgrown with anomalies, inconsistencies and perverse rigidities, it became thicketed with brambled traps for innocent defendants, crisscrossed with circuitous paths and dead ends for seriously wronged plaintiffs, and enshrouded in a "fog of fictions, inferences, and presumptions." This perplexing creation of the common law was transplanted into the United States, where its complexities multiplied in the state legislatures and courts, and its inconsistencies grew multifoliate in the variety of soils provided by federalism....
>
> ....
>
> Very little of this labyrinthine forest makes sense when examined closely, and legal writers have had few kind words for it.

Murnaghan, Francis D., Jr., *Ave Defamation, Atque Vale Libel and Slander,* 6 U.Balt.L.Rev. 27 n. 3 (1976) (quoting *The American Law of Defamation through Gertz v. Robert Welch, Inc. and Beyond: An Analytical Primer,* 61 Va.L.Rev. 1349, 1350–56 (1975)).

Occasionally, judges have not had kind words for it either. In discussing the definitions accorded the terms defamation *per se* and defamation *per quod,* the Fourth Circuit qualified its definitions in a footnote:

> even though [per se and per quod] may be what our late brother, Judge Armistead Dobie, has labeled like-wor-

---

* POLLITT, J., participated in the hearing of the case and in the conference in regard to the decision but retired prior to the filing of the opinion.

shipped designations: "rustic relics of ancient asininity." In like tenor was the District Judge's comments upon these juristic fetishes: "[a]nd the Merlinesque touchstones which attach to them, must be identified, whether or not their existence can be rationally justified."

*Sauerhoff v. Hearst Corp.,* 538 F.2d 588, 590 n. 1 (4th Cir.1976).

The Maryland judiciary has developed its own infrastructure of defamation law which, although made less complex in recent opinions, nevertheless merits a brief discussion to enunciate the principles on which our decision is based. Thus, we take this opportunity to step back and carefully explore the current contours of the path through the legal labyrinth.

## I.

John B. Gooch, the appellant, brought suit against Maryland Mechanical Systems, Inc. ("MMS") and Frederick A. Wolf, a project manager for MMS, the appellees, in the Circuit Court for Baltimore City. The crux of the appellant's complaint was a letter dated August 20, 1985, from Wolf to Steak & Ale Construction Company ("Steak & Ale") that allegedly contained libelous material concerning appellant's business—John G. Gooch Associates. The letter, in pertinent part, stated:

We are of the opinion that you were the victim of false information concerning the air quantities stated in a letter by John B. Gooch & Associates.

On September 9, 1988, the appellees filed a Motion for Summary Judgment, to which the appellant responded with an Opposition to Motion for Summary Judgment. From an order dated December 21, 1988, granting the appellees' motion, the appellant notes a timely appeal to this court. He presents two contentions:

1. The trial court erred when it accepted argument by the appellees that the defamatory statement made by

the appellees in their August 20, 1985 letter was conditionally privileged.

2. The trial court erred when it granted summary judgment for the appellees despite the existence and showing of a material fact issue.

The appellees, in turn, filed a Motion to Dismiss the appeal based on the appellant's failure to include an untranscribed oral ruling by the trial court in the record extract on appeal. The appellees contend that this failure to preserve the record deprives this court of the basis for granting their motion for summary judgment. We shall address this issue first.

## II.

## MOTION TO DISMISS

■ Maryland Rule 8–501(a) places the onus of preparing and filing a record extract upon the appellant. Required to be included in the record extract are "all parts of the record that are reasonably necessary for the determination of the questions presented by the appeal" including "the opinion ... of the trial court, if any." Md.Rule 8–501(c) (1989). Violation of this provision may warrant sanctions that include dismissal of the appeal. *See* Md.Rule 8–501(*l*) (1989); *see also* Md.Rule 8–602(a)(8) (1989). The decision whether to dismiss an appeal for violation of these rules is within an appellate court's discretion. *Skeens v. Paterno*, 60 Md. App. 48, 54 n. 1, 480 A.2d 820 (1984), *cert. denied*, 301 Md. 639, 484 A.2d 274; *Kemp–Pontiac–Cadillac v. S & M Constr.*, 33 Md.App. 516, 521, 365 A.2d 1021 (1976). For reasons that follow, we deny the appellees' motion to dismiss the appeal.

In support of their contention, the appellees principally rely upon this court's decision in *Rogers v. Baker*, 77 Md.App. 199, 549 A.2d 1153 (1988). *Rogers* involved an appeal from a trial court order granting a motion to dismiss. In *Rogers*, the appellant's record extract consisted solely of an index and docket entries from the circuit court. Al-

though the appellee supplemented this record with an appendix to his brief, neither a record of the hearing below nor the lower court's opinion was included. This court noted that the appellee set forth five reasons in support of his motion to dismiss, including "other and further grounds and upon such other and further authorities as may be set forth in the supporting memoranda and at a hearing upon this Motion to Dismiss." *Rogers, supra,* 77 Md.App. at 206, 549 A.2d 1153. In granting the appellees' motion to dismiss in *Rogers,* this court noted that "[t]here is nothing in the record before us to indicate which or how many of those grounds were relied upon by the trial judge." *Id.* In fact, a cause of action could conceivably be dismissed on dozens of different grounds, not necessarily including those articulated in a motion to dismiss.

In contrast, a trial court's determination whether to grant a motion for summary judgment is more constrained:

> Maryland Rule 2–501 authorizes the trial court to grant summary judgment when there is no genuine dispute as to any material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law.

*Liscombe v. Potomac Edison Co.,* 303 Md. 619, 621, 495 A.2d 838 (1985). On appeal:

> Our job in reviewing the grant of summary judgment is identical. We must also decide whether there is a genuine dispute as to any material fact, with inferences drawn in favor of the non-moving party, and whether the moving party is entitled to judgment as a matter of law.

*Brady v. Ralph Parsons Co.,* 308 Md. 486, 496, 520 A.2d 717 (1987). Unlike a situation where the basis of the trial court decision is unknown and the potential reasons for its decision are infinite, *see Rogers, supra,* or where our review of the trial court's decision is limited to determine whether it properly exercised its discretion, *see Langrall, Muir & Noppinger v. Gladding,* 282 Md. 397, 384 A.2d 737 (1978); *Ewachiw v. Director of Finance,* 70 Md.App. 58, 519 A.2d 1327 (1987), the basis of the trial court's decision to grant

summary judgment, while helpful, is not critical to our review.  In fact, it is not unusual for trial courts to issue an order granting summary judgment in favor of one party without articulating a basis in support of the order.  Such a scenario does not prevent us from reviewing the record extract on appeal to determine whether a genuine issue of material fact exists.

Although we decline to dismiss this appeal, we do note that the appellant's failure to preserve the trial court's basis for granting summary judgment puts the appellant in a more difficult position.  By failing to narrow or clarify the issues for our review on appeal, we are constrained to affirm the trial court if its ruling was correct for *any* reason,[1] for it is well settled in Maryland that:

> where the record in a case adequately demonstrates that the decision of the trial court was correct, although on a ground not relied upon by the trial court and perhaps not even raised by the parties, an appellate court will affirm. In other words, the trial court's decision may be correct although for a different reason than relied on by that court.

*Robeson v. State,* 285 Md. 498, 502, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980); *see also Joseph H. Munson Co. v. Secretary of State,* 294 Md. 160, 167–68, 448 A.2d 935 (1982), *aff'd,* 467

---

**1.**  Had the trial court's reasons for granting summary judgment been preserved for our review, affirmation by this court on a basis not relied upon by the trial court could well be improper.  *See Cheney v. Bell Nat'l Life Ins. Co.,* 315 Md. 761, 764, 556 A.2d 1135 (1989); *Henley v. Prince George's County,* 305 Md. 320, 503 A.2d 1333 (1986).  In *Henley,* the court stated:

> As we pointed out in *Metropolitan Mtg. Fd. v. Basiliko,* 288 Md. 25, 27–29, 415 A.2d 582 (1980), a trial judge possesses broad discretion to deny a summary judgment even though the technical requirements for entry of such a judgment have been met.  The effect of our ruling on the issue of proximate cause, or on any other issue not considered by the trial judge, would be to deprive the trial judge of discretion to deny or to defer until trial on the merits the entry of judgment on such issues.

*Id.* at 333, 503 A.2d 1333.

U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); *Aubinoe v. Lewis,* 250 Md. 645, 649, 244 A.2d 879 (1968); *Ellett v. Giant Food, Inc.,* 66 Md.App. 695, 700, 505 A.2d 888 (1986); *Diener Enterprises, Inc. v. Miller,* 35 Md.App. 410, 412 n. 2, 371 A.2d 439 (1977), *cert. denied,* 280 Md. 729; *Loyola Fed. S & L Ass'n v. Galanes,* 33 Md.App. 559, 568, 365 A.2d 580 (1976), *cert. denied,* 279 Md. 683 (1977). Thus, although we are inclined to exercise our discretion not to dismiss the appeal, we will affirm the trial court's order granting summary judgment if it was correct for any reason.

## III.

### CONDITIONAL PRIVILEGE

One of the issues raised by the appellees below and argued on appeal is whether the appellees possessed a conditional privilege to write the letter that is the basis for this defamation suit. A finding of conditional privilege operates to elevate the burden on the appellant to prove the appellees' culpability from simple negligence to a reckless disregard for the truth. *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 600, 350 A.2d 688 (1976). We need not consider this question, however, because we hold that the appellees waived the issue by failing to plead specially this affirmative defense in their answer.

At oral argument, the appellees contended that the appellant waived the failure of the appellees to plead specially conditional privilege below by not presenting this argument in his memorandum in opposition to the defendant's motion for summary judgment. Assuming that the appellees waiver argument, which was not presented in their appellate brief, is preserved, we nevertheless hold that the appellant did raise the conditional privilege issue below.

At oral argument, much was made by the appellees of the appellant's handwritten inclusion in its memorandum of the phrase "Affirm Defense (20) Privilege—Rule 2–323(g)" as it appeared in the Joint Record Extract. The appellees assert,

and it does so appear, that this phrase was inserted subsequent to consideration of the motion for summary judgment by the trial court. The appellant's attorney states that he could not explain how this written insertion came to be included in the joint record extract, but he contends that he did not intentionally mislead this court by his actions. At any rate, this issue is a red herring.

Immediately prior to the written insertion in the memorandum is the typed language:

> Defendants claim truth of the statement by way of justification. See in this connection p. 10 of Defendants' Motion, i.e., "the Alleged Defamatory Statement Was Conditionally Privileged." Since it was not specially pleaded, Defendants may not rely on same.

This argument was before the lower court and gave it sufficient indication of the appellant's contention that the appellees' conditional privilege defense was not specially pled. Therefore, we consider the argument on appeal.

Privilege is an affirmative defense that is required to be set forth separately in the answer. *See* Md.Rule 2–323(g)(20) (1989). Appellees did not set forth any affirmative defenses in their answer. In fact, the first time conditional privilege was mentioned by the appellees was in their response to Request for Admissions Under Rule 2–424 dated September 26, 1988. The defense was subsequently relied upon in their motion for summary judgment. The appellees never attempted to amend their pleadings, pursuant to Rule 2–341, to include the affirmative defense of conditional privilege.

The appellees argue that they *could* have amended their answer under the liberal rules allowing amendment and, further, that no sanction is provided for failing to include an affirmative defense in the answer. The fact that the appellees could have amended their complaint to include the defense is of no moment. The requirement that affirmative defenses be set forth separately is not a mere nicety; it is designed to give notice to the plaintiff of the defenses

asserted to his complaint. This rule prevents unfair surprise and enables a plaintiff to concentrate the focus of his discovery. The fifteen days between the time a motion for summary judgment is filed and the time a response is required[2] is simply insufficient to allow proper preparation for a defense not relied upon in the previous three years. For these reasons, this defense could not properly have been relied upon by the circuit court.

The fact that no "express sanction" is mentioned in the rules for such a failure to plead does not allow for a different result. In *Ocean Plaza Joint Venture v. Crouse Constr. Co.*, 62 Md.App. 435, 490 A.2d 252 (1985), *cert. granted*, 304 Md. 163, 497 A.2d 1163, the appellee, an excavation subcontractor, filed a claim for a mechanics lien against property owned by the appellant. At trial, the appellant introduced two documents—a "General Release of Liens" and a "Waiver of Liens"—to which the appellees did not object. In its opinion and decree, the trial court established the lien in favor of the appellees, expressly refusing to consider any waiver of the lien. Noting that the appellant failed to assert the affirmative defense of waiver[3] of lien in its answer, this court held:

> The trial court correctly excluded the forms of evidence of appellee's waiver of its lien. The forms could not be admitted for this purpose, because appellant's failure to plead specially the issue eliminated it from the case.

*Id.* at 451, 490 A.2d 252. Only those defenses that are expressly set forth in Rule 2–324 (formerly Rule 323b) as being assertable at any time are non-waivable defenses. *Id.* at 445, 490 A.2d 252. Thus, we hold that the failure of a defendant to include an affirmative defense in its original answer or a properly amended answer bars the defendant from relying on the defense to obtain judgment in its favor.

---

2. *See* Md. Rule 2–311(b).

3. *See* Md. Rule 2–323(g)(19).

*See also* Niemeyer & Richards, *Maryland Rules Commentary,* ch. 300 at p. 154 (1984).

## FACTUAL BACKGROUND

As we have already stated, our review of the lower court's grant of summary judgment is to determine "whether there is a genuine dispute as to any material fact." *Brady, supra.* A summary of the pertinent facts, as gleaned from the record extract and the reasonable inferences to be drawn therefrom, is in order.

The appellant is a duly licensed professional engineer trading as John B. Gooch Associates. The firm was professionally engaged in 1985 to perform certain engineering services for a Bennigan's Restaurant owned by Steak & Ale in downtown Baltimore. A representative of the restaurant had contacted the appellant regarding an air flow problem in the kitchen. Apparently, this telephone conversation was precipitated by an unfavorable inspection report from the Baltimore City Health Department. This report, dated July 29, 1985, noted that the "hood system over freezer section ... does not seem to be supplying make-up air adequately."

On August 2, 1985, the appellant dispatched two of his employees to test the air flow in the restaurant kitchen.[4] His employees reported that there was negligible or no air flow under the hood system.

That afternoon, the appellant wrote to the architect, relaying his firm's findings as follows:

Readings were taken at the hood which indicated that the exhaust air quantity was approximately 4,200 cfm and the make up (supply air at the hood) was negligible. The design of the hood called for 5,100 cfm exhaust and 3,060 cfm supply.

We conclude from our readings and observations that the make up air fan # 2 is inoperative; with possible

---

**4.** Apparently, appellee Wolf had agreed to be present for the testing. He arrived approximately 50 minutes after the Gooch employees. By that time, they had finished their testing.

defects such as a broken belt, defective motor, incomplete electrical circuit, *faulty intake damper*,[5] or any number of other mechanical or electrical failures.

(Letter dated August 2, 1985 to Lynwood E. Brown) (emphasis supplied). The appellant also wrote that the make-up air fan, identified as MAF # 2, needed to be verified, including its inter-lock with the exhaust system, and that he should be informed as to what action MMS would take to correct the problem. He then requested that a copy of a prior certified air balance report made by Baltimore Air Balance Company ("BABCO") be sent to him together with the modified air balance report showing correction of the problem.

After Steak & Ale was informed of the appellant's report, it wrote to MMS, installer of the air flow system, and requested that MMS reimburse it for the moneys it paid the appellant for his report. On behalf of MMS, Wolf responded by letter on August 20, 1985, rejecting Steak & Ale's demand for reimbursement.

In explanation, Wolf stated that his firm had inspected the system on the evening of August 2, 1985. They installed a larger pulley on the exhaust fan, checked the make-up air fan for obstructions in the duct work, and requested that BABCO again test the air flow in the system. Apparently, BABCO's initial test conducted several days prior to the appellant's test indicated that the system was operating within specifications. Significantly, however, BABCO explained that it had to open the intake damper manually in order to conduct the test because "the outside air damper was not connected to the motor that mechanically opens the damper when the circulation system is turned on."[6] Utiliz-

---

**5.** In an affidavit attached to the appellees' motion for summary judgment, Wolf acknowledged that the Gooch employees who tested the air flow "offered several possible explanations for the results, including ... [a] faulty intake damper."

**6.** No copy of this report was ever presented to Gooch; nor is it in the record on appeal. An affidavit from Wolf indicates that the test

ing the results of the second BABCO test, Wolf stated that "[e]xhaust fan # 2 is now delivering 5622 CFM and the Make-up Air fan # 2 is delivering 2850 CFM, the same air quantity as it was during the initial reading." Wolf then went on to make the allegedly defamatory statement:

We are of the opinion that you were the victim of false information concerning the air quantities stated in a letter by John B. Gooch & Associates.

## IV.

As we will discuss, the elements necessary to establish a *prima facie* case of defamation sufficient to withstand a motion for summary judgment are a defamatory communication, publication to a third person, falsity, fault, and harm. These elements have received extensive attention in the past few decades as our judicial system has attempted to define them and create a sound foundation for their consistent application in the field of defamation law.

### THE DEVELOPMENT OF DEFAMATION LAW

The United States Supreme Court entered the field of defamation in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), establishing what has come to be known as the constitutional malice standard. *New York Times* involved a publication concerning a public official that was libelous *per se* under Alabama common law. Because it was libelous *per se*, Alabama law permitted presumed damages. 376 U.S. at 262, 84 S.Ct. at 716. The Supreme Court, extolling our national commitment to uninhibited debate on public issues and expressing its fear that the Alabama law would result in overextensive media self-censorship, reversed the Alabama court and held that the first amendment

---

results for both the exhaust fan and the make-up fan were below design specification, but within 10% of design specification. The significance of this percentage is of some dispute.

prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

*Id.* at 279–80, 84 S.Ct. at 726. This holding was later extended to include "public figures," as well. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). The Court was not as decisive, however, where private individuals were concerned.

The Supreme Court re-examined the standard to apply when the defamatory communication involves private individuals, rather than public officials or public figures, in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The Court overturned its earlier decision in *Rosenbloom v. Metromedia*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1970),[7] and held that when the defamation concerns a private individual, "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood." *Gertz*, 418 U.S. at 347, 94 S.Ct. at 3010. The Court explained that it viewed this approach to be an equitable boundary between the competing interests involved: "It recognizes the strength of the legitimate state interest in compensating private individuals for wrongful injury to reputation, yet shields the press and broadcast media from the rigors of strict liability for defamation." *Id.* at 347–48, 94 S.Ct. at 3011. The Court, however, limited recovery to actual damages, holding that presumed and punitive damages are not recoverable without a showing of constitutional malice. *Id.* at 349, 94 S.Ct. at 3011.

---

**7.** In *Rosenbloom,* the Court held that although the defamatory communication involved a private party, a constitutional malice standard was required, nevertheless, because the subject matter of the defamatory communication was of public interest. *Rosenbloom,* 403 U.S. at 52, 91 S.Ct. at 1824.

Although it declined to define "actual injury," the *Gertz* Court stated that actual injury is not limited to out-of-pocket loss. "Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* at 350, 94 S.Ct. at 3012.

Following the Supreme Court's directive, the Court of Appeals of Maryland, in *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976), established the framework for defamation law in Maryland. Reading *Gertz* to apply to private individuals regardless of whether the subject matter of the defamation is of public or general interest, *id.* at 590, 350 A.2d 688, the Court held as a matter of law that *Gertz* applies to both media and non-media defendants and to both libel and slander. *Id.* at 592, 350 A.2d 688.

Having determined the scope of the *Gertz* decision, the Court of Appeals then adopted § 580B of the Restatement (Second) of Torts (Tent.Draft No. 21, 1975) as the appropriate standard to be applied in cases of purely private persons. *Id.* at 596, 350 A.2d 688. Section 580B states:

§ 580B. Defamation of Private Person.

One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity, is subject to liability, if, but only if, he

(a) Knows that the statement is false and that it defames the other,

(b) Acts in reckless disregard of these matters, or

(c) Acts negligently in failing to ascertain them.

Under the negligence standard, (§ 580B(c)) it is no longer the defendant's burden to establish the affirmative defense of truth. Rather, the burden is shifted to the plaintiff who now must prove falsity, "since, under this standard, he is already required to establish negligence with respect to such falsity." *Jacron,* 276 Md. at 597, 350 A.2d 688.

Further, the proof of fault required, in accordance with that which is ordinarily required in other negligence actions, is a preponderance of the evidence. *Id.*

Thus, under Maryland law, to recover damages in a suit grounded in defamation, a "private individual" plaintiff must prove the following elements:

(1) a defamatory communication;

(a) "defamatory"—a statement tending to expose one to public scorn, hatred, contempt, or ridicule. *See Mareck v. Johns Hopkins University,* 60 Md.App. 217, 223 [482 A.2d 17] (1984), *cert. denied,* 302 Md. 288 [487 A.2d 292] (1985).

(b) "publication"—a communication to a third person who reasonably recognizes the statement as being defamatory. *See Mareck, supra.*

(2) falsity;

(3)(a) fault by a negligence standard;

(b) fault by a constitutional malice standard, *i.e.,* a reckless disregard for the truth of the statement;

(c) or fault by actual malice standard, *i.e.,* knowledge of the falsity of the statement; *see Jacron, supra,* 276 Md. at 596–97 [350 A.2d 688] (adopting the position taken by the *Restatement (Second) of Torts* in § 580B); and

(4) harm.

*See Hearst Corp. v. Hughes,* 297 Md. 112, 122, 466 A.2d 486 (1983) (articulated by the Court as the *"Jacron* rule").

In light of these developments, the Court of Appeals broached the issue of whether Maryland law continues to recognize any distinction between libel *per se* and libel *per quod.* Traditionally, a plaintiff in a defamation action was relieved of the burden of showing actual damages resulting from the defamatory communication where the communication was libelous *per se.*[8] *Hearst Corp.,* 297 Md. at 118–19,

---

**8.** The determination of whether a statement is libelous *per se* is a legal one. *M & S Furniture Sales Co. v. Edward J. DeBartolo Corp.,* 249 Md. 540, 544, 241 A.2d 126 (1968); *Kilgour v. Evening Star Newspaper Co.,*

466 A.2d 486; *Fennell v. G.A.C. Finance Corp.*, 242 Md. 209, 226, 218 A.2d 492 (1966); *Hanlon v. Davis,* 76 Md.App. 339, 351, 545 A.2d 72 (1988). In *Metromedia, Inc. v. Hillman,* 285 Md. 161, 400 A.2d 1117 (1979), the Court explained the differences between defamation *per se* and defamation *per quod:*

> "In the case of words or conduct actionable per se [9] their injurious character is a self-evident fact of common knowledge of which the court takes judicial notice and need not be pleaded or proved. In the case of words or conduct actionable only per quod, the injurious effect must be established by allegations and proof of special damage and in such cases it is not only necessary to plead and show that the words or actions were defamatory, but it must also appear that such words or conduct caused actual damage."

*Metromedia,* 285 Md. at 163–64, 400 A.2d 1117 (quoting *M & S Furniture Sales Co. v. Edward J. DeBartolo Corp.,* 249 Md. 540, 241 A.2d 126 (1968)).

The Court, in *Metromedia,* stated that the effect of *Gertz* and *Jacron* is that to defeat a motion for summary judgment, when alleging libel in a Maryland court, the plaintiff must allege:

(1) a false and defamatory communication

a—which the maker knows is false and knows that it defames the other, or

b—that the maker has acted in reckless disregard of these matters, or

c—that the maker has acted negligently in failing to ascertain them, and

---

96 Md. 16, 23, 53 A. 716 (1902); *Wineholt v. Westinghouse Elec. Corp.,* 59 Md.App. 443, 447, 476 A.2d 217, *cert. denied* 301 Md. 354, 483 A.2d 38 (1984).

**9.** "Actionable per se" is another term of art casually mentioned in defamation law which carries precisely the same meaning as defamation per se. *See Black's Law Dictionary* (1979).

(2) that the statement was one which appears on its face to be defamatory, as, e.g., a statement that one is a thief, or the explicit extrinsic facts and innuendo which make the statement defamatory, and

(3) allegations of damages with some particularity, since *Gertz* and *Jacron* forbid presumed damages.

*Metromedia*, 285 Md. at 171–72, 400 A.2d 1117. The Court concluded:

> In sum, the only distinction remaining in Maryland between a libel per se and libel per quod is that to recover the plaintiff must first show that the publication is defamatory. Where the words themselves impute the defamatory character, no innuendo—no allegation or proof of extrinsic facts—is necessary; but otherwise, it is. This is both a pleading rule and an evidentiary requirement. Where extrinsic facts must be shown in order to establish the defamatory character of the words sued upon, the omission to plead them makes the complaint demurrable for failure to state a cause of action. Failure to prove them would justify a directed verdict.

*Id.* at 172–73, 400 A.2d 1117. Thus, Maryland continues to recognize a distinction between libel *per se* and libel *per quod.*

Finally, in *Hearst Corp. v. Hughes*, 297 Md. 112, 466 A.2d 486 (1983), the Court of Appeals held that damages for emotional harm may be recovered in a negligent defamation case without any predicate proof of damages to the plaintiff's reputation, where the trial court is "persuaded ... that the publication did produce personal humiliation and mental anguish." *Id.* at 117, 130–31, 466 A.2d 486. In *dicta*, the court stated:

> [A]s a matter of Maryland law, the presumption of harm to reputation still arises from the publication of words actionable per se. A trier of fact is not constitutionally barred from awarding damages based on that presumption in a constitutional malice case. A trier of fact is

constitutionally barred from awarding damages based on that presumption in a negligent defamation case. *Id.* at 125–26, 466 A.2d 486.

Thus, evidence sufficient to create a jury question raising the fault standard to constitutional malice negates the requirement that the plaintiff prove actual damages where the publication is actionable *per se*. *Id.* at 125, 466 A.2d 486. Accordingly, if the defamatory communication is libelous *per quod*, actual damages must be alleged and proved. If the defamatory communication is libelous *per se*, actual damages need not be alleged, nor proven, if there is constitutional malice.

Hence, the question which must be addressed first is whether the defamatory communication at issue is libelous *per se* or libelous *per quod*.

## V.

■ The critical words in this matter are those contained in the phrase "victim of false information." To determine whether the phrase "victim of false information" is libelous *per se*, "the words themselves must impute the defamatory character." *Leese v. Baltimore County*, 64 Md.App. 442, 473–74, 497 A.2d 159, *cert. denied* 305 Md. 106, 501 A.2d 845 (1985) (quoting *Metromedia, Inc., supra*, 285 Md. at 172, 400 A.2d 1117). Standing alone, the word "false" can be interpreted as encompassing an unintentional mistake, or it also can be construed as an intentional lie.[10] As defined by *Webster's New Collegiate Dictionary* (1981), the word "victim" can mean "one that is acted upon and . . . adversely affected by a force or agent," or "one that is subjected to oppression, hardship, or mistreatment," or "one that is tricked or duped." Thus, both "false" and "victim" can be interpreted from both intentional and unintentional perspectives. Extrinsic facts, therefore, are necessary to deter-

---

**10.** Synonyms include "erroneous," "incorrect," "intentionally untrue," "dishonest," "deceitful," etc. *See* Webster's Third New International Dictionary, p. 819 (1981).

mine the connotation that was understood by third parties to be attached to the alleged defamatory communication. Accordingly, we hold that the defamatory communication at issue is libelous *per quod*, necessitating that actual damages be alleged and proved.

## VI.

█ In his Complaint, the appellant alleged:

That by reason of the writing and publication of defendants' letter containing deceptive, scurrilous, false and defamatory matter, plaintiff has been held up to contempt and reproach, that he has been greatly injured in his professional standing and reputation with other professionals and employees, that he has suffered great pain and mental anguish, has lost time and money and business advantage and will in the future suffer likewise.

To support this, the appellant claimed that because of appellee Wolf's statement, he lost work from Lynwood E. Brown, an architect involved in the Bennigan's project. In an affidavit, however, Mr. Brown stated:

My decision to curtail my use of Mr. Gooch since August of 1985 was not based on the contents of Mr. Wolf's August 20, 1985 letter. Instead, my decision was due to the uncooperative attitude Mr. Gooch displayed by filing this lawsuit ... I concluded that he was not willing to work cooperatively with others toward accomplishing the completion of a task.

This affidavit was countered by an affidavit from Jerry E. Powell, an employee of John B. Gooch Associates. In the affidavit, Mr. Powell relayed the following:

On January 7, 1987, Mr. John B. Gooch asked me to pick up the telephone to answer a question of Mr. Lynwood E. Brown regarding a Project we had designed. Following my answer to Mr. Brown, Mr. Gooch asked Mr. Brown why we had not done any new work with Mr. Brown for over a year and Mr. Brown answered Mr. Gooch by citing the Bennigan's Baltimore Project problem and further

said that we would not be doing any future work with him or with Steak & Ale. Mr. Gooch then asked if this decision was made *solely as a result of the contractor's letter* of August 20, 1985 to Steak & Ale and Mr. Brown answered, "Exactly." Shortly after this the telephone conversation was ended. [Emphasis added].

Ordinarily, drawing all inferences in favor of the appellant, we would find that the affidavit by Mr. Powell presents a genuine dispute as to a material fact on the issue of damages. The report of Mr. Brown's statement by Mr. Powell, however, can only be characterized as classic hearsay. As reported, the statement is being offered to prove that Mr. Brown denied further contracts to Mr. Gooch because of the Wolfe defamation statement. We note, however, that the substance of the affidavit—which was a prior inconsistent statement—could have been used for impeachment purposes at a trial on the merits had sufficient probative evidence of damages been presented to overcome the summary judgment motion. While proof of a prior contradictory statement may have an evidentiary effect of impeaching the credibility of a witness, it may not be employed as a matter of substantive evidence. *Poole v. State*, 290 Md. 114, 119, 428 A.2d 434 (1981).

It is axiomatic that facts proffered in opposition to the granting of a motion for summary judgment must be admissible in evidence. *James v. Tyler*, 269 Md. 48, 52, 304 A.2d 256 (1973); *Lowman v. Consolidated Rail Corp.*, 68 Md. App. 64, 71, 509 A.2d 1239 (1986); *Cottman v. Cottman*, 56 Md.App. 413, 422–23, 468 A.2d 131 (1983); *Lerner v. Ammerman*, 56 Md.App. 134, 144, 467 A.2d 187 (1983). Furthermore, Rule 2–501(c) of the Maryland Rules states: "An affidavit supporting or opposing a motion for summary judgment ... shall set forth such facts as would be admissible in evidence ..."

Since the appellant failed to present probative evidence on the issue of damages, we hold that the lower court correctly found that no genuine dispute as to material fact existed.

Accordingly, we hold that summary judgment was appropriate in this matter.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.

ALPERT, J., dissents and concurs.

ALPERT, Judge, dissenting and concurring.

Although I agree with my learned colleagues that appellant has not established a genuine dispute of material fact with respect to proof of his damages, that alone cannot "carry the day." [1] As the majority points out, "[i]f the defamatory communication is libelous *per se*, actual damages need not be alleged, nor proven, if there is constitutional malice." In other words, the effect of *Hearst Corp. v. Hughes*, 297 Md. 112, 466 A.2d 486 (1983), was to revive the concepts of libel *per se* and presumed damages at least in constitutional malice cases after their apparent demise in *Metromedia, Inc. v. Hillman*, 285 Md. 161, 400 A.2d 1117 (1979). I disagree with the majority's holding that "the defamatory communication at issue is libelous *per quod*, necessitating that actual damages be alleged and proved." I believe that the subject communication is libelous *per se* and explain.

## CONSTITUTIONAL MALICE—RECKLESS DISREGARD FOR THE TRUTH

Evidence sufficient to create a jury question raising the fault standard to constitutional malice negates the requirement that plaintiff prove actual damages where the publication is actionable *per se. Hearst Corp., supra*, 297 Md. at 125, 466 A.2d 486. *Hanlon v. Davis*, 76 Md.App. 339, 356, 545 A.2d 72 (1988). Thus, if sufficient facts exist to find

---

1. I do, however, concur with the majority's holdings on appellees' "Motion to Dismiss" and the issue of "conditional privilege."

constitutional malice where the publication[2] is libelous *per se*, we need not consider whether actual damages have been shown because damages to reputation are presumed.

Appellant has generated an issue of material fact to satisfy the higher level of culpability—constitutional malice. BABCO's July report referred to the fact that its employees had to manually open the air intake damper to conduct its air flow test. Wolf concedes this in his affidavit, but explains that "after the BABCO test, the linkage connecting the damper to the motor was installed so that the damper would open automatically when the fans were turned on." Acknowledging that appellant's employees indicated that the low air flow results may have resulted from a "faulty intake damper," Wolf further states that on the evening of appellant's test the system was checked and "operating correctly." Wolf then relies on the August BABCO report in its letter to justify his characterization of the Gooch report. Significantly, however, the test sheet for the second BABCO test, which was conducted subsequent to appellant's test, states, "Outside air dampers does [sic] not open when fan is running. Opened manualy [sic] for testing." This report indicates a continuing problem with the intake damper, one of the primary causes cited for the low results by appellant.

Instead of further investigating this possible problem as indicated by both BABCO tests as a cause of appellant's low air flow results, Wolf wrote a letter to Steak & Ale maintaining that it was a "victim of false information." No mention of BABCO's problems appears in the letter. At worst, a trier of fact considering the information with which it could believe Wolf was armed, could find that he should not have responded with an outright defamatory dismissal of Gooch's results. A reasonable trier of fact could find that under such circumstances, appellees acted with a reckless disregard for the truth.

---

**2.** There is no dispute here that the contents of the letter were in fact communicated to a third party.

## LIBEL PER SE—APPLICATION IN THIS CASE

In Maryland, a libel action such as this one is actionable *per se* where the "injurious character [of the words] is a self-evident fact of common knowledge." [3] *M & S Furniture Sales Co. v. Edward J. DeBartolo Corp.*, 249 Md. 540, 544, 241 A.2d 126 (1968). To determine whether the phrase "victim of false information" is libelous *per se* "the words themselves [must] impute the defamatory character." *Leese v. Baltimore County*, 64 Md.App. 442, 473–74, 497 A.2d 159, *cert. denied*, 305 Md. 106, 501 A.2d 845 (1985) (quoting *Metromedia, Inc., supra*, 285 Md. at 172, 400 A.2d 1117). Standing alone, the word "false" has two separate connotations.[4] While the word "false" could be interpreted

---

**3.** In what is considered the "majority view," presumed damages may be recovered in all libel actions, subject only to constitutional restraints. *Restatement (Second) of Torts* §§ 568 comment b, 569 (1977); Harper, James & Gray, *The Law of Torts* § 5.9A, at 82–84 (2d ed.1986). *But see* Prosser, *Libel Per Quod*, 46 Va.L.Rev. 839 (1960) (claiming that this is the minority view). There is some confusion among several scholars as to Maryland's view on this issue. Dean Prosser counts Maryland among those states recognizing a distinction between libel *per se* and libel *per quod* in reference to whether presumed damages may be recovered. *See* Prosser, *supra*, at 845. Laurence Eldredge criticizes Dean Prosser's characterization as either reliance on mere dicta or confusion with the torts of injurious falsehood or disparagement of property. Eldredge, *The Spurious Rule of Libel Per Quod*, 79 Harv.L.Rev. 733, 750–51 (1966). In Harper, James & Gray, *supra*, at 84, the authors cite to *Metromedia, Inc.*, in support of their contention that Maryland has abolished the libel *per se* /libel *per quod* distinction in favor of a rule requiring that "actual injury" be pled in all defamation cases. We believe that *Hearst Corp.* and *IBEW, Local 1805 v. Mayo*, 281 Md. 475, 379 A.2d 1223 (1977) make it clear that presumed damages for presumed injury to reputation may be recovered in the same instances as they always have been recoverable in Maryland defamation cases, subject only to constitutional constraints. In this respect, the libel *per se* /libel *per quod* distinction that has clearly evolved in Maryland at common law, *see M & S Furniture v. Edward J. DeBartolo Corp.*, 249 Md. 540, 241 A.2d 126 (1968); *Heath v. Hughes*, 233 Md. 458, 197 A.2d 104 (1964); *Stannard v. Wilcox & Gibbs Sewing Mach. Co.*, 118 Md. 151, 84 A. 335 (1912), is alive and well.

**4.** Synonyms include "erroneous," "incorrect," "intentionally untrue," "dishonest," "deceitful," etc. *See* Webster's Third New International Dictionary, at 819 (1981).

as encompassing an unintentional mistake, it could also be construed as an intentional lie. As defined by *Webster's Third New International Dictionary* (1981), the word "victim" means "someone tricked, duped, or subjected to hardship . . . someone badly used or taken advantage of." *Id.* at 2550. When the words "victim" and "false" are used in conjunction with each other, it is plain that the phrase "victim of false information" imputes dishonesty or deceitfulness to the appellant regarding his test and subsequent report concerning Bennigan's air flow system.

In *Kilgour v. Evening Star Newspaper Co.*, 96 Md. 16, 53 A. 716 (1902), the Court of Appeals stated:

"Words spoken of a person in his office, trade, profession, business or means of getting a livelihood, which tend to expose him to the hazard of losing his office, or which charge him with fraud, indirect dealings or incapacity and thereby tend to injure him in his trade, profession or business, are actionable without proof of special damage, even though such words if spoken or written of an ordinary person, might not be actionable *per se.*" 18 *Am. & Eng. Ency. of Law*, p. 942 (2nd ed.); *Wilson v. Cottman*, 65 Md. 197 [3 A. 890].

"The words must go so far as to impute to him some incapacity or lack of due qualification to fill the position, or some positive past misconduct which will injuriously affect him in it." *Sillars v. Collier*, 151 Mass. 50 [23 N.E. 723]; *Newell on Defamation, Slander and Libel*, ch. 8, p. 178; *Townsend, Libel and Slander*, secs. 188, 189.

So this Court said in *Newbold & Sons v. The J.M. Bradstreet & Son*, 57 Md. 53: "To say or publish of a merchant anything that imputes insolvency, inability to pay his debts, the want of integrity in his business, or personal incapacity or pecuniary inability to conduct it with success, is slanderous or libelous *per se* if without justification."

*Id.* at 23–24, 53 A. 716. Although a charge of "a single act of carelessness" does not necessarily impute "incapacity or

lack of due qualification," *see Foley v. Hoffman,* 188 Md. 273, 284, 52 A.2d 476 (1947), an allegation of a single act of deceit, fraud or dishonesty in one's business or calling certainly does impute a "want of integrity in [one's] business" sufficient to call into question one's moral or ethical qualifications concerning his profession. Unlike a single instance of carelessness or neglect, charges of dishonesty infect one's entire character and spread doubt in the minds of reasonable persons as to one's fitness to continue to serve in his or her profession, trade, or business. I would hold, as a matter of law, that Wolf's letter imputed dishonest or deceitful conduct to the appellant and was, therefore, actionable *per se.*

Because I would hold the statement is libelous *per se* and the evidence generates an issue of material fact as to whether appellees acted in reckless disregard for the truth, appellant's failure to present evidence of actual damages is not fatal. In light of recent Supreme Court authority apparently limiting the *Gertz*[5] limitation of presumed and punitive damages, I think it necessary, however, to continue our discussion in this regard.

### PRESUMED DAMAGES IN NEGLIGENT DEFAMATION CASES—HEARST REVISITED

Subsequent to *Hearst Corp.,* the Supreme Court has issued a pertinent opinion regarding the recoverability of presumed damages. In *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), the Supreme Court held that the *Gertz* rule barring the recovery of presumed or punitive damages in a case where actual malice[6] has not been proven is

---

5. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

6. The Supreme Court has defined "actual malice" in this regard as "knowledge that it was false or with reckless disregard of whether it was false or not." *Dun & Bradstreet, supra,* 472 U.S. at 755, 105 S.Ct.

inapplicable in cases not involving matters of public concern. *Id.* at 761, 105 S.Ct. at 2946. The holding in *Dun & Bradstreet* is not consistent with the Court of Appeals' opinion in *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976), that the *Gertz* constitutional damage limitation covers matters of both public and private concern.

Thus, I turn to the question of whether, absent *Gertz* constitutional constraints, Maryland law would prevent a negligent defamation plaintiff from recovering presumed or punitive damages in a purely private matter. With the exception of *Jacron*'s adoption of a fault standard of negligence in purely private actions, nothing in the Maryland decisions indicates that our courts have modified or altered Maryland defamation law outside the pressures exerted by constitutional winds.

Presumed damages are based on the presumed injury to one's reputation from words actionable *per se. See Hearst Corp., supra,* 297 Md. at 125, 466 A.2d 486. Following *Dun & Bradstreet, supra,* presumed damages are constitutionally permissible in purely private negligent defamation actions. Because the historical focus of presumed damages is not upon the level of the defendant's culpability, but rather on the presumption of harm flowing from words actionable *per se,* they would be permitted in negligent defamation actions under the common law of defamation in Maryland. *Jacron,* however, explicitly precludes the recovery of such damages in all negligent defamation cases, albeit the linchpin for that decision has been knocked out from beneath it by the Supreme Court in *Dun & Bradstreet.* I leave this issue for the Court of Appeals to resolve.

## CONCLUSION

The correlative doctrines of libel *per se* and presumed damages are alive and well in Maryland today. Although

---

at 2943 (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964)).

under *Dun & Bradstreet* application of the above doctrines is constitutionally permissible not only where the level of fault reaches the dimension of constitutional malice, but also where mere negligence is shown in purely private defamation actions, whether application of the *Jacron* principles in Maryland is limited by the *Dun & Bradstreet* decision remains to be decided by our Court of Appeals. Because the statement in the letter written by Wolf was libelous *per se* and because the evidence was sufficient to generate an issue as to a reckless disregard for the truth, damages may be presumed. Therefore, the fact that appellant has not generated an issue as to actual damages will not operate to defeat his claim by way of a motion for summary judgment.

I would hold that appellant has generated an issue of material fact as to all the elements necessary to sustain a prima facie case of defamation. The trial court's grant of summary judgment in favor of appellees, the specific basis of which is unknown, necessarily indicates that the trial court found that appellant did not establish such a prima facie case. As such, the ruling was incorrect and, therefore, should be reversed.